McCrary, Circuit Judge.
The complainant, as assignee in bankruptcy of A. J. Nutter, bankrupt, and as representing the creditors of the bankrupt estate, brings this bill to set aside two certain mortgages executed by the bankrupt upon a stock of merchandise, and to subject the same to the payment of the debts of the estate.
*509 The mortgage is assailed upon the ground that the mortgagor retained the possession of the goods mortgaged, and used and disposed of the same as his own; and upon the further ground that the mortgage was not recorded until'after the debts, represented by complainant, were contracted.
One of the mortgages expressly provided, that the mortgagor might dispose of the goods in the usual course of business; the other contained no such provision, but it appears that there was in fact no change of possession, and that the mortgagor, after the execution of both mortgages, and with the assent of the mortgagees, retained the possession and continued to carry on the business, buying and selling in the usual course of trade, for about one year before the mortgages were recorded, and for a little more than a year before possession was taken under them.
The debts represented by the complainant were contracted while the mortgagor was in possession and before the recording of the mortgages, and the creditors had no notice of any incum-brance upon the property.
The statute of Iowa provides as follows: “No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged, like conveyance of real estate, and filed for record with the recorder of the county where the holder of the property resides.’.’ Code 1873, Sec. 1923.
. Two questions have been elaborately discussed by counsel, to wit: •
First—Whether, under the statute, a mortgage of personal property, not recorded, is valid as against a subsequent creditor who becomes such without notice of such mortgage?
Second—Whether, independently of the statute, a mortgage of personal property where the mortgagor retains the possession and deals with the property as his own, is valid as against a creditor of the mortgagor, who becomes such without notice of the mortgage?
The first of these, being a question as the true construction of a statute of the state of Iowa, we are constrained to follow the decisions of the Supreme Court of the state, however much we may doubt the soundness of those decisions.
*510 Were this an original question we should hold, without hesitation, that the statute was enacted to .prevent the perpetration of fraud by the sale or mortgage of personal property, without the delivery of the possession, and without notice to persons subsequently dealing with the vendor or mortgagor.
Independently of any statutory provision, a manual delivery of the mortgaged property to the mortgagee would be necessary to the validity of the instrument.
This rule of the common law had its foundation in the doctrine that possession of personal property is prima facie evidence of ownership. To allow the owner of such property to transfer the title by a secret conveyance, while retaining the possession and assuming to act as the owner, was regarded at common law as permitting a fraud upon all who should deal with him upon the faith of his ownership.
His possession and apparent ownership, it was believed, gave him credit and afforded him the means of defrauding others.
The purpose of the legislature in enacting this statute was not, in our judgment, to set aside this wholesome doctrine, and thus enable dishonest persons to commit fraud by means of secret chattel mortgage, it was only to substitute recording for delivery.
If thus construed, the statute affords a protection against fraud quite as effectual as that given by the common law; but if we hold that a secret unrecorded sale or mortgage may be enforced as against a creditor who deals with the vendor or mortgagor in ignorance of its existence, unless such creditor shall by attachment, or otherwise, obtain a lien before having notice of the instrument, it seems to us that the door for fraud is left wide open.
One who gives credit to a merchant in the open and exclusive possession of a stock of merchandise upon which there is no recorded lien, has a right to assume that he is dealing with the owner of such stock, and to rely upon such ownership in extending credit. If he is to be affected by any secret lien upon such stock, which may be recorded before he secures a lien by levy or otherwise, it will generally happen that the first notice to him upon which he can make an affidavit for attachment, will be the recording of the lien, so that the circumstance that gives him the right, cuts off the remedy.
*511 If, therefore, we were at liberty to construe the statute for ourselves, we should unhesitatingly hold the mortgages in question in this case to be void under the statute. But the Supreme Court of Iowa, whose decisions upon the construction of state statutes are rules of decision in this court, have reached, upon this question, a different conclusion.
By a series of decisions that court has held that an unrecorded mortgage of chattels, where the mortgagor retains possession, is valid as against creditors who receive notice at any time before obtaining a lien by levy or otherwise. Hughes v. Cory, 20 Iowa, 399; Allen v. McCalla, 25 Iowa, 465; and other cases cited in note to the case of Cragin v. Carmichael, 2 Dillon, 519.
The question remains, whether these mortgages should be held void independently of the statute, upon the ground that the mortgagor retained the possession of the property, with power to dispose of the same in his usual course of trade.
As already stated, the proof shows that the mortgagor remained in possession, and continued the business, with the assent of the mortgagees. The case of Robinson v. Elliott, 22 Wallace, 513, is, we think, conclusive of this controversy.
It was there distinctly held that a mortgage of chattels, which permitted the mortgagor to,remain in possession until default in payment of the debt secured, with power to sell the goods as theretofore, was fraudulent and void in law, and could not be enforced by a court of equity.
Mr. Justice Davis, who delivered the opinion of the court, expressed the opinion, that to sustain the validity of such a transaction, would be to permit the mortgagors, under cover of the mortgage, to sell the goods as their own and appropriate the proceeds to their own purposes, and he adds, that “A mortgage, which in its very terms contemplates such results, besides being no secruity to the mortgagees, operates in the most effectual manner to ward off other creditors; and where the instrument on the face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose.”
This is a doctrine of general jurisprudence not depending for its support upon any provision of state law, and we are, therefore, bound by the decision of the Supreme Court of the United States.
*512 If there be anything in the decision of the Supreme Court of Iowa, in Jordan v. Lendrum, 10 N. W. R., 9, inconsistent with the doctrines announced in Robinson v. Elliott, supra, we must follow the latter, and not the former.
It is suggested that the mortgages in controversy being good as between the parties, are also good as between the mortgagees and the assignee in bankruptcy of the mortgagor; but, the rule is well settled that the assignee represents the rights of creditors, and may attack conveyances made by the bankrupt in fraud of his creditors.
The assignee may prosecute any' suit to recover in the hands of third parties, or to enforce the payment of claims that could have been prosecuted by the creditors themselves, had no proceedings in bankruptcy been instituted.
There will be decree for complainant.
Love, District Judge, concurs.