## PEOPLE'S SAVINGS BANK *v.* BATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MICHIGAN.

Argued November 16, 17, 1886. — Decided March 7, 1887.

In Michigan, when a chattel mortgage is attacked as fraudulent against subsequent creditors or mortgagees in good faith, by reason of the mortgagor being permitted to remain in possession and to prosecute his business in the ordinary way, it is the province of the jury to determine whether such fraud is proved; but when the evidence is overwhelming, and leaves no room for doubt as to what the fact is, the court may give the jury a peremptory instruction covering the issue.

In Michigan a creditor at large cannot attack a chattel mortgage made by the debtor, except through some judicial process, whereby he acquires an interest in the property; as by levy of attachment or execution.

In Michigan the mortgagee in a chattel mortgage, given to secure a preexisting debt, is not a " mortgagee in good faith," within the intent of the statute of that state which provides that every such mortgage "which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed" in the place or places indicated in the act.

The doctrine that the *bona fide* holder for value of negotiable paper, transferred as security for an antecedent debt merely, and without other circumstances, is unaffected by equities or defences between prior parties of which he had no notice, does not apply to instruments conveying real or personal property as security, in consideration only of preexisting indebtedness.

THIS was an action of replevin involving conflicting claims under certain chattel mortgages executed by Freedman Bros. & Co., formerly merchants in the city of Detroit. The firm was composed of Herman Freedman, who managed its business in Detroit; Benjamin Freedman, who resided in New York, and had entire charge of the buying and of the firm's financial affairs in that city; and Rosa Freedman. At the beginning of the action the mortgaged property was in the custody of Leopold Freud as agent of the People's Savings Bank, plaintiff in error.

Bates, Reed & Cooley, the defendants in error, who were the plaintiffs below, claimed priority under a mortgage given by Freedman Bros. & Co., February 7, 1881, to secure both the past indebtedness of the latter amounting to forty-five thousand dollars and upwards, for goods, wares, and merchandise sold, and money loaned, to them, and any future liabilities which might be incurred by the mortgagors for other goods purchased, or other moneys borrowed, from the mortgagees; the mortgage, covering not only the goods, wares, merchandise, and other personal property then in the mortgagors' stores in Detroit, but also their notes, book accounts, and securities, and all future additions to, or substitutions for, such goods and merchandise. No part of said indebtedness was created at the time of the execution of the mortgage.

The People's Savings Bank claimed under a mortgage made by Freedman Bros. & Co., on the 11th of February, 1881, to secure certain demand notes, aggregating forty-nine thousand dollars, which were executed by that firm on the 7th day of February, 1881, and also "all other paper indorsed" by it and held by the bank; that mortgage covering all the goods and merchandise then in the mortgagors' stores and all thereafter put into them. This last mortgage provided that Leopold Freud, the bank's agent, should take immediate possession and sell the goods in the ordinary course of business, applying the proceeds to said indebtedness until the same was paid. The said demand notes represented past indebtedness; for they were given in place of other paper of the mortgagors then outstanding, and which had not then matured. Each demand note was accompanied by a cognovit or "confession of judgment," under which, however, no action was taken. The mortgage to the bank was the first one filed in the proper office in Detroit, though it was not lodged until after the bank had notice, through its agent, that Bates, Reed & Cooley claimed to be in possession of or to have rights in the mortgaged property. Whether the bank, before the mortgage to it was given, had actual notice of the prior mortgage to Bates, Reed & Cooley does not clearly appear.

By the statutes of Michigan relating to chattel mortgages

it was provided that " every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the mortgagor resides, except when the mortgagor is a non-resident of the state, when the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the property is." 2 Howell's Annotated Statutes, pp: 1607, 1610, § 6193.

*Mr. John Atkinson* (*Mr. James T. Keena, Mr. Ashley Pond,* and *Mr. George V. N. Lothrop* were with him on the brief) for plaintiffs in error cited: *Robinson* v. *Elliott,* 22 Wall. 513; *Fearey* v. *Cummings,* 41 Mich. 376; *Putnam* v. *Reynolds,* 44 Mich. 113; *Talcott* v. *Crippen,* 52 Mich. 633; *Oliver* v. *Eaton,* 7 Mich. 108; *Gay* v. *Bidwell,* 7 Mich. 519; *Lucking* v. *Wesson,* 25 Mich. 443; *Gardner* v. *Matteson,* 38 Mich. 200; *Kohl* v. *Lynn,* 34 Mich. 360; *Gill* v. *Griffith,* 2 Maryland Ch. 270; *Farrington* v. *Sexton,* 43 Mich. 454; *Lee* v. *Brown,* 7 Geo. 275; *Frost* v. *Goddard,* 25 Maine, 414; *Shaw* v. *Levy,* 17 S. & R. 99; *Winslow* v. *Leonard,* 24 Penn. St. 14;[1] *Lanfear* v. *Sumner,* 17 Mass. 110 [*S. C.* 9 Am. Dec. 119]; *Ricker* v. *Cross,* 5 N. H. 570 [*S. C.* 22 Am. Dec. 480]; *Lamb* v. *Durant,* 12 Mass. 54 [*S. C.* 7 Am. Dec. 31]; *Frank* v. *Miner,* 50 Ill. 444; *Constant* v. *Matteson,* 22 Ill. 546; *Atkyns* v. *Byrnes,* 71 Ill. 326; *Judson* v. *Corcoran,* 17 How. 612; *Smith* v. *Algar,* 1 B. & Ad. 603; *Longridge* v. *Dorville,* 5 B. & Ald. 117; *Burchard* v. *Frazer,* 23 Mich. 224; *Jones* v. *Graham,* 77 N. Y. 628; *Frisbey* v. *Thayer,* 25

---

[1] *S. C.* 72 Am. Dec. 354.

Wend. 396; *Dickerson* v. *Tillinghast,* 4 Paige, 215 [*S. C.* 25 Am. Dec. 528]; *Van Heusen* v. *Radcliff,* 17 N. Y. 580 [*S. C.* 72 Am. Dec. 480]; *Thompson* v. *Van Vechten,* 27 N. Y. 568; *Gafford* v. *Stearn,* 51 Ala. 434; *Short* v. *Battle,* 52 Ala. 456; *Zorn* v. *Railroad Co.,* 5 S. C. 90; *Pancoast* v. *Duval,* 26 N. J. Eq. (11 C. E. Greene) 445; *Mingus* v. *Condit,* 23 N. J. Eq. (8 C. E. Greene) 313; *Wells* v. *Morrow,* 38 Ala. 125; *Gilchrist* v. *Goff,* 63 Ind. 576; *Strangham* v. *Fairchild,* 80 Ind. 598; *Manning* v. *McClure,* 36 Ill. 490; *Butters* v. *Haughwout,* 42 Ill. 18; *Kranert* v. *Simon,* 65 Ill. 344; *Cook* v. *Helms,* 5 Wis. 107; *Jenkins* v. *Schaub,* 14 Wis. 1; *Paine* v. *Benton,* 32 Wis. 491; *Roxborough* v. *Messick,* 6 Ohio St. 448 [*S. C.* 67 Am. Dec. 346]; *Cleveland* v. *State Bank,* 16 Ohio St. 236; *Copeland* v. *Manton,* 22 Ohio St. 398; *Atkinson* v. *Brooks,* 26 Vt. 569 [*S. C.* 62 Am. Dec. 592]; *Quinn* v. *Hard,* 43 Vt. 375; *Russell* v. *Spalter,* 47 Vt. 273; *Stoddard* v. *Kimball,* 6 Cush. (Mass.) 469; *Fisher* v. *Fisher,* 98 Mass. 303; *Bank* v. *Carrington,* 5 R. I. 515 [*S. C.* 73 Am. Dec. 83]; *Brush* v. *Scribner,* 11 Conn. 388 [*S. C.* 29 Am. Dec. 303]; *Bridgeport City Bank* v. *Welch,* 29 Conn. 475; *Stone* v. *Welling,* 14 Mich. 514, and cases cited; *Railroad Co.* v. *Nat. Bank,* 102 U. S. 14; *Swift* v. *Tyson,* 16 Pet. 1; *Bayley* v. *Greenleaf,* 7 Wheat. 46: *Payne* v. *Bensley,* 8 Cal. 260 [*S. C.* 68 Am. Dec. 318].

*Mr. D. M. Dickinson* for defendants in error cited: *Railroad Co.* v. *Bank,* 102 U. S. 14; *Allan* v. *Massey,* 17 Wall. 351; *Sumner* v. *Hicks,* 2 Black. 532; *Swift* v. *Tyson,* 16 Pet. 1, 15; *Outhaite* v. *Porter,* 13 Mich. 533; *Boxheimer* v. *Gunn,* 24 Mich. 372; *Stone* v. *Welling,* 14 Mich. 514; *Kohl* v. *Lynn,* 34 Mich. 360; *Maury* v. *Woods,* 33 Iowa, 265; *Thomas* v. *Stone,* Walker (Mich.), 117; *Dixon* v. *Hill,* 5 Mich. 404; *Warner* v. *Whittaker,* 6 Mich. 133 [*S. C.* 72 Am. Dec. 65]; *Blanchard* v. *Tyler,* 12 Mich. 339; *Johnson* v. *Peck,* 1 Woodb. & Min. 334; *Morse* v. *Godfrey,* 3 Story, 364; *Rison* v. *Knapp,* 1 Dillon, 186; *Atkinson* v. *Brooks,* 26 Vt. 569 [*S. C.* 62 Am. Dec. 592]; *Bay* v. *Coddington,* 5 Johns. Ch. 54 [*S. C.* 9 Am. Dec. 268], affirmed 20 Johns. 636; *Weaver* v. *Barden,* 49 N. Y.

286 ; *Thompson* v. *Van Vechten*, 27 N. Y. 568 ; *Cary* v. *White*, 52 N. Y. 138 ; *Jones* v. *Graham*, 77 N. Y. 628 ; *Jenness* v. *Bean*, 10 N. H. 266 [*S. C.* 34 Am. Dec. 152] ; *Ashton's Appeal*, 73 Penn. St. 153 ; *Boyd* v. *Beck*, 29 Ala. 703 ; *Spurlock* v. *Sullivan*, 36 Texas, 511 ; *Johnson* v. *Graves*, 27 Ark. 557 ; *Busenbrake* v. *Ramey*, 53 Ind. 499 ; *Gilchrist* v. *Gough*, 63 Ind. 576 ; *Ryan* v. *Chew*, 13 Iowa, 589 ; *Prentice* v. *Zane*, 2 Gratt. 262 ; *Butters* v. *Haughwout*, 42 Ill. 18 ; *Kranert* v. *Simon*, 65 Ill. 344 ; *Knox* v. *Hunt*, 18 Missouri, 174 ; *Bramhall* v. *Beckett*, 31 Maine, 205 ; *Brush* v. *Scribner*, 11 Conn. 388 [*S. C.* 29 Am. Dec. 303] ; *Leland* v. *Collver*, 34 Mich. 418 ; *American Cigar Co.* v. *Foster*, 36 Mich. 368 ; *People* v. *Bristol*, 35 Mich. 28 ; *Wingler* v. *Sibley*, 35 Mich. 231 ; *Robson* v. *Mich. Cent. Railroad*, 37 Mich. 70 ; *Cadwell* v. *Pray*, 41 Mich. 307.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

The mortgagees, respectively, insist that there was, within the meaning of the statute, an immediate delivery to them, followed by an actual and continued change of possession of the things mortgaged ; the bank claiming to have taken possession under its mortgage on the 11th of February, 1881, while Bates, Reed & Cooley, denying that the bank ever had such possession as the law requires, contend that they took possession on the 15th of February, 1881. But the claim of neither party in that respect is satisfactorily sustained by the proof. The evidence does not show such open, visible, and substantial change of possession as the law required in order to give notice to the public of a change of ownership. *Doyle* v. *Stevens*, 4 Mich. 87, 93. In a sense, both parties were in possession by agents early on the morning of the 15th of February, each claiming the exclusive right to manage and control the property under the terms of the respective mortgages. As the contest for such management and control was likely to result in an unseemly display of force, the parties, on that day, entered into an agreement, which recited their respective claims of priority both of possession and of right, and provided — "neither

party waiving or surrendering any right or advantage" — that
the possession of each should remain as it then was, and that
the business should continue as it was then being conducted,
all the proceeds of sale being deposited in bank and remaining
there intact until these conflicting claims should be settled by
judicial decision or by agreement. The claims were not settled
by agreement; and the defendants in error, having insisted
that this arrangement was not being carried out in good faith,
and having been refused exclusive possession, brought this
action — as they might do consistently with the agreement —
to obtain a judicial determination of their rights. In adopt-
ing that course they surrendered no right they had in the
premises.

In behalf of the bank it is contended that the mortgage to
Bates, Reed & Cooley was fraudulent as against subsequent
creditors and mortgagees in good faith, in that the mortgagees
contemplated that the mortgagors should remain in possession
and prosecute the business in the ordinary mode. The mort-
gage of February 7, 1881, certainly contains no provision of
that kind. But if the extrinsic evidence establishes that such
a course upon the part of Freedman Bros. & Co. was, in fact,
contemplated by Bates, Reed & Cooley, it would only show
that the mortgagees were willing to give the mortgagors an
opportunity to avoid a suspension of their business and bank-
ruptcy — the additions to the stock in trade being bought un-
der the mortgage, so as to compensate the mortgagees for any
diminution in value by reason of goods disposed of in the usual
course of business. If the mortgage had, in terms, made pro-
vision for such a course upon the part of the mortgagors, as
the bank contends was in the contemplation of the mortgagees,
it would not be held, as a matter of law, to be absolutely void
or fraudulent as to other creditors. *Oliver* v. *Eaton*, 7 Mich. 108,
112; *Gay* v. *Bidwell*, 7 Mich. 519, 523; *People* v. *Bristol*, 35
Mich. 28, 32; *Wingler* v. *Sibley*, 35 Mich. 231; *Robinson* v.
*Elliott*, 22 Wall. 513, 523. The good faith of such transac-
tions, where they are not void upon their face, is, under the
statutes of Michigan, a question of fact for the determination
of the jury. *Oliver* v. *Eaton* and *Gay* v. *Bidwell*. That rule

does not, however, restrict the power of the court to give to the jury a peremptory instruction, covering such an issue, when the evidence is all on one side, or so overwhelmingly on one side, as to leave no room to doubt what the fact is. In this case there is an entire absence of any evidence impeaching the good faith of Bates, Reed & Cooley in procuring the mortgage of February 7, 1881. There is nothing whatever to show that they had any purpose to commit a fraud or to put their mortgagors in such a position that the latter could more readily deceive or defraud other creditors.

Besides, as the court below held, upon this branch of the case, the bank, in its capacity as a creditor at large, is not entitled to attack the prior mortgage as fraudulent upon the grounds just stated. This general proposition is conceded by counsel, the usual way, he admits, being for the creditor, who has no particular claim in the property, to acquire a specific interest therein through the levy of an attachment or execution. Hence, he says, that while it is often stated that conveyances of this sort are void as to creditors generally, they must put their claims in the form of a judgment or attachment before they are in a position to attack them — the object of the attachment or execution being to bring the attacking party into privity with the property. And such seems to be the rule recognized by the Supreme Court of Michigan. In *Fearey* v. *Cummings*, 41 Mich. 376, 383, the court, construing a somewhat similar statute, said: "If the mortgage was made with the intent to hinder, delay, or defraud creditors (Comp. L. § 4713), or, inasmuch as the possession was not altered, if it was not put on file prior to plaintiffs becoming creditors, it was invalid as against them; the law being that those who become creditors whilst the mortgage is not filed are protected, and not merely those who obtain judgments or levy attachments before the filing. Still no one, as creditor at large, can question the mortgage. He can only do that by means of some process or proceeding against the property. Sec. 4706." In that case the court cites *Thompson* v. *Van Vechten*, 27 N. Y. 568, 582, in which it was held, in reference to a somewhat similar statute, that "the mortgage cannot be legally

questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his property; for creditors cannot interfere with the property of their debtor without process."

But it is argued that this rule does not apply in the case of a creditor who is a second mortgagee in possession. Such possession, it is claimed, gives him the right, by way of defence, and without resorting to attachment and before obtaining judgment, to assert the invalidity of the prior mortgage. There is some apparent support to this position in *Putnam* v. *Reynolds*, 44 Mich. 113, 115. That was a suit in equity brought to foreclose a chattel mortgage not filed until after the mortgagor had become insolvent, and while his estate was being disposed of by an assignee for the benefit of creditors. The court said that there was reason to believe that the mortgagor acted in bad faith; that the mortgage was left off the record for the purpose of giving the mortgagor a credit to which he was not entitled; in which case, the mortgage was void in fact, irrespective of the statute. Upon this ground alone the court declined to give the relief asked, remitting the mortgagee to his remedy, if any he had, at law. It expressly declined to decide whether the rule that creditors cannot attack a mortgage except indirectly, through a seizure of the property by attachment or other suitable process, applies where the mortgage was originally valid, but is made void by the subsequent neglect of the mortgagee. The case in hand cannot be brought within the principle announced in *Putnam* v. *Reynolds*, for the reason, if there were no other, that there was no fraud in fact upon the part of Bates, Reed & Cooley, nor any unreasonable delay in filing the mortgage of February 7, 1881. It was filed shortly after the mortgage to the bank was lodged for record.

This disposes of all the material questions in the case preliminary to the main inquiry whether the bank — the mortgage to it having been really given to secure past indebtedness of the mortgagors — is, in the meaning of the statute, a subsequent "mortgagee in good faith." If not, the mere filing of the mortgage of February 11, 1881, before that of February 7,

1881, did not give it priority of right over Bates, Reed & Cooley; and the mortgage that was in fact first executed and delivered, must be held to give priority of right.

In *Kohl* v. *Lynn*, 34 Mich. 360, 361, the Supreme Court of Michigan said that, "the statute which makes a mortgage of chattels, which has not been recorded, void 'against subsequent purchasers or mortgages in good faith,' uses those terms in the sense which has always been attached to them by judicial decisions." Guided by this rule, which we deem a sound one, we concur with the court below in holding that the words "mortgagee in good faith," mean the same thing as "mortgagee for a valuable consideration without notice."

It is insisted that the principles announced in *Swift* v. *Tyson*, 16 Pet. 1, and *Railroad Co.* v. *National Bank*, 102 U. S. 14, sustain the proposition that the bank was a mortgagee in good faith, although the mortgage to it may be held to have been given merely as security for past indebtedness. The general doctrine announced in *Swift* v. *Tyson* was, that one who becomes the holder of negotiable paper, before its maturity, in the usual course of business and in payment of an existing debt, is to be deemed to have received it for a valuable consideration, and is, therefore, unaffected by any equities existing between antecedent parties. In that case, Mr. Justice Story said that the rule was applicable as well as when the negotiable instrument was received as security for, as when received in payment of, a preëxisting debt. In *Railroad Co.* v. *National Bank*, it was held, conformably to the recognized usages of the commercial world, that "the transfer before maturity of negotiable paper as security for an antecedent debt merely, without other circumstances, if the paper be so indorsed that the holder becomes a party to the instrument, although the transfer is without express agreement by the creditor for indulgence, is not an improper use of such paper, and is as much in the usual course of commercial business as its transfer in payment of such debt. In either case, the *bona fide* holder is unaffected by equities or defences between prior parties, of which he had no notice." p. 28.

Do these principles apply to the case of a chattel mortgage

given merely as security for a preëxisting debt, and in obtaining which the mortgagee has neither parted with any right or thing of substance nor come under a binding agreement to postpone or delay the collection of his demand? Upon principle, and according to the weight of authority, this question must be answered in the negative.

The rules established in the interests of commerce to facilitate the negotiation of mercantile paper, which, for all practical purposes, passes by delivery as money, and is the representative of money, ought not, in reason, to embrace instruments conveying or transferring real or personal property as security for the payment of money. At any rate, there is nothing in the usages of merchants, as shown in this record, or so far as disclosed in the adjudged cases, indicating that the necessities of commerce require that chattel mortgages be placed upon the same footing in all respects as negotiable securities which have come to the hands of a *bona fide* holder for value before their maturity. Such a result, if desirable, must be attained by legislation, rather than by judicial decisions.

One of the earliest cases in the Federal courts upon this subject is that of *Morse* v. *Godfrey*, 3 Story, 364, 389. It there appeared that one Reed mortgaged to Godfrey all stock in trade and nearly all his real estate. The latter subsequently mortgaged the same property to a bank. In a contest between the bank and the assignee in bankruptcy of Reed, the former claimed to be a *bona fide* purchaser for value without notice of the invalidity, under the bankrupt law, of the mortgages to Godfrey. Mr. Justice Story said:

"This leads me to remark that the bank does not stand within the predicament of being a *bona fide* purchaser, for a valuable consideration, without notice, in the sense of the rule upon this subject. The bank did not pay any consideration therefor, nor did it surrender any securities, or release any debt due, either from Reed or Godfrey, to it. The transfer from Godfrey was a simple collateral security, taken as additional security, for the old indebtment and liability of the parties to the notes described in the instrument of transfer. It is true that, as between Godfrey and Reed and the bank,

the latter was a debtor for value, and the transfer was valid. But the protection is not given by the rules of law to a party in such a predicament merely. He must not only have had no notice, but he must have paid a consideration at the time of the transfer, either in money or other property, or by a surrender of existing debts or securities held for the debts and liabilities.

"But here the bank has merely possessed itself of the property transferred as auxiliary security for the old debts and liabilities. It has paid or given no new consideration upon the faith of it. It is, therefore, in truth, no purchaser for value in the sense of the rule. . . ."

After referring to *Dickerson* v. *Tillinghast*, 4 Paige, 215,[1] in which it was held by Chancellor Walworth that the transfer of an estate upon which there was a prior unrecorded mortgage, in payment of a preëxisting debt, without the transferee giving up any security or divesting himself of any right, or placing himself in a worse situation than he was in before, did not make the latter, who was without notice of the prior mortgage, a grantee or purchaser for a valuable consideration, Mr. Justice Story proceeded : " I do not say that I am prepared to go quite to that length, seeing, that by securing the estate as payment, the preëxisting debt is surrendered and extinguished thereby. But here there was no such surrender or extinguishment or payment ; and the general principle adopted by the learned Chancellor is certainly correct, that there must be some new consideration moving between the parties, and not merely a new security given for the old debts or liabilities without any surrender or extinguishment of the old debts and liabilities or the old securities therefor. So that upon this ground alone the title of the bank would fail. The case of *Swift* v. *Tyson*, 16 Pet. 1, does not apply. In the first place, there the bill was taken in payment or discharge of a preëxisting debt. In the next place, it was a case arising upon negotiable paper, and who was to be deemed a *bona fide* holder thereof, to whom equities between other parties should not apply. Such a case is not necessarily governed by the same

---

[1] *S. C.* 25 Am. Dec. 528.

considerations as those applicable to purchasers of real or personal property under the rule adopted by courts of equity for their protection." See also *Rison* v. *Knapp*, 1 Dillon, 186, 200, 201.

In *Johnson* v. *Peck*, 1 Woodb. & Min. 334, 336, which was a case of a mortgage given to secure a preëxisting debt due from a mortgagor who had previously purchased the goods under such representations as entitled his vendor to sue to recover them back, Mr. Justice Woodbury said : "When rights of third persons intervene in this class of cases they are to be upheld, if those persons purchased the property absolutely and parted with a new and valuable consideration for it without notice of any fraud. . . . But if they have notice of the fraud or give no new valuable consideration, or are mere mortgagees, pawnees, or assignees in trust for the debtor, or for him and others, such third persons are to be regarded as holding the goods open to the same equities and exceptions as to title as they were open to in the hands of the mortgagor, pawner, or assignor."

And so in 2 American Leading Cases, 5th Amer. ed., p. 233, it is stated, and we think properly, as the doctrine established by a preponderance of authority, that "whatever the rule may be in the case of negotiable instruments, it is well settled that the conveyance of lands or chattels as security for an antecedent debt will not operate as a purchase for value, or defeat existing equities." See 2 Leading Cases in Equity, 104, 3d Am. ed.; *Strangham* v. *Fairchild*, 80 Ind. 598.

Such, we think, is also the doctrine of the Supreme Court of Michigan. In *Kohl* v. *Lynn*, 34 Mich. 360, the court, after observing that the object of the statute is to protect those who have acquired rights under the circumstances which would render them liable to be defrauded unless protected against instruments of which they knew nothing when acquiring their rights, said : "It has always been held that a purchaser who had paid nothing could not be thus defrauded, and that no one could be protected as a *bona fide* purchaser, except to the extent of his payments made before he received such notice as should have prevented him from making further payments.

This doctrine has been too uniformly recognized to require discussion or citation of authorities. As Kohl had made no payments at all before the property was replevied from him, he was not a *bona fide* purchaser, and his rights are subject to the mortgage."

In *Stone* v. *Welling*, 14 Mich. 514, 525, where the issue was between the holder of an unrecorded mortgage and a subsequent grantee, who agreed to surrender indebtedness of the grantor to him and others, and put the deed on record without notice of the mortgage, the court said:

" Welling claims that the agreement which was given for the deed was amply sufficient to support it, and to entitle him to the rights of a *bona fide* purchaser under the recording laws. It was satisfactory, it is said, to Hart; and as to the indebtedness held by Welling and Root against him, it would have the effect of a present discharge. That it was satisfactory to Hart can be of no consequence on this question, since, to constitute Welling a *bona fide* purchaser he must have parted with something of value, and not merely given a contract which he could avoid, if his title under the deed proved defective. *Thomas* v. *Stone*, Walker's Ch. 117; *Dixon* v. *Hill*, 5 Mich. 404; *Warner* v. *Whittaker*, 6 Mich. 133;[1] *Blanchard* v. *Tyler*, 12 Mich. 339. Nor do we think the agreement had the effect to discharge any indebtedness. It was executory in its character, covering not only the claims of Welling and Root, but also other claims to be procured by them, and upon which it cannot be claimed that the agreement itself would have any effect whatever."

In *Boxheimer* v. *Gwin*, 24 Mich. 372, 379, the defendant in a suit brought to foreclose a recorded mortgage, relied upon a subsequent deed of the mortgagor; which he was induced to take under the representation of the latter, that the mortgage debt had been paid. After sustaining the claim of the plaintiff upon certain grounds, the court said that the defendant must fail in the suit upon the further ground that, although he acted with good faith, he was not a *bona fide* purchaser or

---

[1] *S. C.* 72 Am. Dec. 65.

encumbrancer for value, with equities superior to those of the plaintiff, because it appeared that the conveyance to him was "merely as a security for a precedent debt," without his paying or agreeing to pay any other consideration or relinquishing any remedy or right he may have had.

Without further discussion of the authorities cited by counsel, all of which have been carefully examined, we are of opinion that the claim of the bank to be a subsequent mortgagee in good faith cannot be sustained, because the mortgage of February 11, 1881, although first filed, was not given in consideration of its having surrendered, or agreed to surrender, or to postpone the exercise, of any substantial right it had against the mortgagors, but merely as collateral security for past indebtedness. Under such circumstances, the mortgage which was prior in time confers a superior right.

Other questions of a minor character are discussed by counsel, but it is not deemed necessary to consider them.

We perceive no error in the record, and the judgment is

*Affirmed.*