### DUGAN v. BECKETT.

(Circuit Court of Appeals, Fifth Circuit. March 8, 1904.)

No. 1,241.

1. **CHATTEL MORTGAGES—VALIDITY—FRAUD—FEDERAL COURTS—STATE LAW—RULE OF DECISION.**

In determining whether a chattel mortgage executed by a bankrupt was fraudulent on its face, the federal courts follow the decisions of the courts of last resort of the state in which the controversy arose, the law on the subject being regarded as a rule of property.

2. **SAME—MORTGAGOR'S POSSESSION—EFFECT.**

Where a chattel mortgage on a bankrupt's stock of goods authorized the mortgagor to continue in possession and sell the goods, but required that he should deposit to the mortgagee's bank account each day the receipts for sales over the amount of the running expenses of the store, to be applied on the debt, and that, if he failed so to do, the trustee named in the mortgage should at once take possession and sell the stock at public auction, such mortgage was not fraudulent on its face.

Appeal from the District Court of the United States for the Northern District of Mississippi.

On February 26, 1901, Joe A. Cohen executed and delivered the following mortgage:

"In consideration of the sum of one dollar, I convey and warrant to J. C. Baptist, as trustee, the following property now situated in the storehouse now occupied by J. A. Cohen in the City of West Point, Clay County, Mississippi, to-wit:

"All the stock of goods, wares and merchandise now in said storehouse, together with all showcases, counters, fixtures and iron safe. Also all goods, wares and merchandise to be hereafter acquired and placed in said storehouse, on all of which this incumbrance shall immediately attach, together with all notes, securities, accounts and bank [book] debts now made and due him in the course of his business or hereafter to be made or acquired by him in the course of said business.

---

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

¶ 2. See Chattel Mortgages, vol. 9, Cent. Dig. § 410.

"In trust, to secure R. C. Beckett a promissory note from me to him for the sum of twenty-three hundred and twenty-five ($2,325.00) dollars, of this day and date, due and payable on the 1st day of November, 1901, bearing interest at the rate of 8% from date.

"Now the consideration of this deed of trust is that the said R. C. Beckett has paid on his indorsement for said J. A. Cohen and for advancements this day made to said J. A. Cohen to pay his debts, and for money also this day advanced to said J. A. Cohen, to enable him to make cash purchases in a replenishment of his said stock of goods now on hand, so as to enable him to sell the same to the best advantage. And the agreement being that the said J. A. Cohen is to deposit the net proceeds from said business, over and above running expenses thereof, each day, to the credit of R. C. Beckett in the Bank of West Point, Miss., until said indebtedness is fully paid off and satisfied, and it being further agreed that all the purchases hereafter made by the said J. A. Cohen are to be for cash from the said fund so advanced, and also, that in the event of any other purchases being made, or any other purchases being made on credit, that the seller shall first be notified, in writing, of the existence of this trust deed.

"Now, therefore, if the said J. A. Cohen shall faithfully comply with all the provisions of this trust, and pay said amount at or before maturity, then this trust is to be void.

"But if said J. A. Cohen shall violate any of the provisions of this deed, or shall not have the same fully paid off and discharged at the maturity thereof, together with all interest, then, in either event, the said trustee at the request of said R. C. Beckett or his assigns or legal representatives, shall immediately take charge of all of said property mentioned and included in this trust deed, and in the true intent and meaning thereof, and shall proceed to sell the same at public outcry to the highest bidder 'for cash, in front of the Courthouse door of said county, after giving ten days' notice of the time, place and terms of sale by written or printed notices put up in at least three public places in said county, and out of the proceeds shall first pay all the costs and charges incident to the execution of this trust; and shall then pay whatever balance is due to said R. C. Beckett, until the same is fully paid off and satisfied, and the balance shall be paid to said J. A. Cohen or whoever may at the time be legally entitled thereto.

"The said J. C. Baptist accepts the provisions of this trust. If the said J. C. Baptist should die, or remove from the state, county or town, or should become unable or unwilling or fail or refuse to execute this trust, then said R. C. Beckett, or his assigns or legal representatives, may appoint another trustee, who shall have and exercise the same powers and duties, and this power to appoint a substituted trustee shall exist as often and so long as any vacancy from any of the above causes shall occur or exist.

"Witness our signatures this Feby. 26, 1901.

"[Signed]      Joe A. Cohen.

"I accept this trust.      J. C. Baptist, Trustee.

"R. C. Beckett."

The mortgage was duly acknowledged by the parties to it on the day of its date, and was duly filed and recorded in the proper office on the same day. On a petition filed in the lower court December 2, 1901, Joe A. Cohen was adjudicated an involuntary bankrupt, and Henry Dugan was appointed his trustee in bankruptcy. Cohen having made default in the payment of the mortgage to secure the debt to Beckett, F. G. Barry, who had been substituted as trustee in the mortgage, took possession of the mortgaged goods. Barry, as such trustee under the mortgage, sold the goods under an agreement between all the parties in interest that he would deposit the proceeds of the sale in bank, and that they should be turned over, without deduction, to the trustee in bankruptcy, subject to the rights of R. C. Beckett and others. On January 29, 1902, R. C. Beckett filed his petition in the bankruptcy court claiming under the mortgage the proceeds of the sale of the goods. On February 24, 1902, Henry Dugan, trustee in bankruptcy, answered Beckett's petition, alleging that the mortgage was void as to creditors because Cohen was allowed to remain in possession of the merchandise and to continue to sell the same. Beckett's petition was referred to the referee, and on a hearing before him he found

and reported to the court that the mortgage was not void on its face, and that it was not invalid as matter of fact. And he thereupon ordered that the proceeds of the sale of the goods to the amount of $2,177.85, with interest thereon, be paid to R. C. Beckett by the trustee in bankruptcy out of money in his hands derived from the sale of the property described in the mortgage. The referee's report was confirmed by decree of the district court, and thereupon Henry Dugan, trustee in bankruptcy, appealed to this court, and assigns that the court below erred in the decree rendered.

T. W. Brame (Ivy & Ivy and Brame & Barnes, on the brief), for appellant.

R. C. Beckett, pro se.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellant's contention is that the mortgage to secure the debt to Beckett is void under the common law and the statutes of Mississippi. If that is true, although it was executed more than four months before the adjudication in bankruptcy, it could not be enforced as a valid lien on the bankrupt's estate against the creditors of the bankrupt. The appellant contends (1) that the mortgage is void for actual fraud, and (2) that it is void on its face. There is nothing in the record to sustain the first contention. The evidence shows without conflict that Beckett only sought to secure the payment of a just debt. If it be conceded that Cohen's conduct was fraudulent after the execution of the mortgage, there is no proof whatever that Beckett, or the trustee named in the mortgage, was connected with it, or even had any knowledge of it. Such fraudulent conduct on the part of the grantor, if it be proved, would not affect the rights of Beckett under the mortgage. Baldwin v. Little, 64 Miss. 126, 8 South. 168; Emerson v. Senter, 118 U. S. 3, 6 Sup. Ct. 981, 30 L. Ed. 49. The question to be decided is whether, as matter of law, the mortgage on its face is valid or invalid. More than 20 years ago a learned writer on mortgages said that whether a mortgage of the stock of goods of a trader, which permits the mortgagor to sell the mortgaged property in the usual course of trade, is necessarily fraudulent, is one of the disputed questions of our jurisprudence. Jones, Chat. Mort. 379. The same conflict of authority on the question continues, the courts of last resort in the several states differing greatly in their conclusions. 6 Cyc. 1104. In deciding the question the federal courts follow the decisions of the courts of last resort of the state in which the controversy arose, the law on the subject being regarded as a rule of property. Such a mortgage was by the Supreme Court held void in Indiana (Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758), but it would "not be held, as a matter of law, to be absolutely void or fraudulent as to other creditors" in Michigan (People's Savings Bank v. Bates, 120 U. S. 556, 561, 7 Sup. Ct. 679, 30 L. Ed. 754); and such a mortgage is valid in Iowa (Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171). In the latter case, after deciding the question as one of local law, the court observed that: "If this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they

are made in good faith." There are well-considered authorities that sustain the position that it is not fraud per se for the mortgagor of chattels to retain a power of sale, and that the retention of such power is only a circumstance to be considered by the court or jury, as the case may be, in determining the question of fraud in fact. Jones on Chat. Mortgages (3d Ed.) 379; 6 Cyc. 1104. The mortgage before the court, the validity of which is in question, is not simply a mortgage on a stock of goods which permits the mortgagor in the usual course of trade to sell the mortgaged property, but it contains other provisions which must be considered in connection with this retained power of sale. It permits Cohen, the mortgagor, to retain possession of the merchandise and to continue his business, and as to the disposition of the money, the proceeds of sales, it is provided: "And the agreement being that the said J. A. Cohen is to deposit the net proceeds from said business, over and above running expenses thereof, each day, to the credit of R. C. Beckett in the Bank of West Point, Miss., until said indebtedness, is fully paid off and satisfied." It is provided, also, that if the mortgagor "shall violate any of the provisions of this deed" the trustee, at the request of the beneficiary, shall immediately take charge of the property and foreclose the mortgage. In Robinson v. Elliott, supra, in which, following the local law, a mortgage was held void, the mortgagor having retained the power of sale in the usual course of business, the court was careful to say:

"We are not prepared to say that a mortgage under the Indiana statute would not be sustained which allows a stock of goods to be retained by the mortgagor, and sold by him at retail for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors."

And in Etheridge v. Sperry, supra, Mr. Justice Brewer, speaking for the Supreme Court, said:

"In neither of those cases [referring to Means v. Dowd, 128 U. S. 273, 9 Sup. Ct. 65, 32 L. Ed. 429, and Robinson v. Elliott, supra] is it affirmed that a chattel mortgage on a stock of goods is necessarily invalidated by the fact that either in the mortgage or by parol agreement between the parties the mortgagor is to retain possession, with the right to sell the goods at retail. On the contrary, it is clearly recognized in them that such an instrument is, valid, notwithstanding these stipulations, if it appears that the sales were to be for the benefit of the mortgagee."

Under the rule indicated by these cases, the mortgage in question here clearly should not be held invalid on its face, unless we are required to do so by the laws of Mississippi. By statute in Mississippi every conveyance of goods or chattels, by writing or otherwise, contrived of fraud or collusion with the intent or purpose to hinder, delay, or defraud creditors, is void as against creditors of the grantor. Rev. Code 1892, § 4226. But such conveyance is not void as to subsequent creditors unless made with the intent to defraud them. Id. § 4228. In Harman v. Hoskins, 56 Miss. 142, the court held that a mortgage given by a merchant on his stock of goods, which authorized him to remain in possession and continue business under the direction of a named trustee, was upon its face fraudulent and void. An examination of the case shows that it is not out of harmony with the cases that we have already

cited. The mortgage evidently on its face showed that it did not serve as a genuine security. The mortgagor was left in possession of the stock of goods, with the power to sell the same, and to make purchases to replenish his stock in the usual course of business. It did not provide that a dollar of the money for which he sold the goods should be applied to the payment of the debt apparently secured by the mortgage. The court, in declaring the mortgage void on its face, laid stress on the fact that "nothing is said about cash sales or money thus derived." In Joseph v. Levi, 58 Miss. 843, 846, the court held that a like mortgage was void on its face as to creditors, although it provided for monthly accounts to be rendered to the trustee, and for payment to him of the money received, to be applied, however, to payment of the current expenses of the business and in making purchases to replenish the stock. It will be noted that it made no provision for the application of the proceeds of the sale of the goods in payment of the debt secured. The court said:

"As the money was not to be applied to the discharge of the debt secured by the terms of the deed of trust, and was to be kept in the business, the instrument is not distinguished from those which have been held to be incurably vicious and void."

In each of these cases it seems clearly implied that, if provision had been made in the mortgage for an application of the proceeds of the sale of the goods to the payment of the debts secured, they would not have been held void on their face. The fact that the mortgage permits the mortgagor to hold the property and deal with it does not make the mortgage void. The rule, as announced in Mississippi, is that "it is only where the conveyance so unmistakably reserves the right to the mortgagor to deal with the property mortgaged as his own that all evidence to the contrary should be excluded as contradicting the writing that a court can declare the deed fraudulent in law." Britton v. Criswell, 63 Miss. 394, 401. The provision in the mortgage in question here requiring the proceeds of the sale of the goods to be applied to the payment of the debt secured by the mortgage makes it unlike the mortgages which the Supreme Court of Mississippi holds to be necessarily invalid. The court is of the opinion that the mortgage, on its face, is not invalid.

The decree of the District Court is affirmed.