### MITCHELL v. MITCHELL.

(District Court, E. D. North Carolina.   September 7, 1906.)

1. BANKRUPTCY—SUIT BY TRUSTEE—JURISDICTION OF COURT OF BANKRUPTCY.
   Where a trustee in bankruptcy has instituted a suit in equity in the District Court to set aside an alleged fraudulent conveyance, and the defendant has answered and submitted his claims to the court or master without objection, he cannot thereafter object to the jurisdiction on the ground that the bill does not state a case in equity.

2. SAME—VALIDITY OF MORTGAGE—CLAIM OF EXEMPTIONS.
   The personal property exemptions given to a debtor by the laws of North Carolina are for his own benefit and can only be claimed by him personally; a mortgagee of a bankrupt cannot set up the latter's right of exemptions in the mortgaged property to validate his mortgage against the charge that it constituted a fraudulent transfer under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449].

3. SAME—FRAUDULENT MORTGAGE.
   Where a chattel mortgage on a stock of goods was not recorded for several months after its execution nor until less than four months prior to the bankruptcy of the mortgagors, who in the meantime were permitted to remain in possession of the property, and to sell the same in the usual course of business and replenish the stock, such mortgage is fraudulent and void as against the bankrupt's creditors, both prior and subsequent.

4. SAME—SUIT BY TRUSTEE TO RECOVER PROPERTY.
   Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449] vests a trustee in bankruptcy with title to property fraudulently transferred by the bankrupt within four months prior to the bank-

ruptcy, and he may maintain a suit to recover possession of the same regardless of whether or not there are judgment creditors who could have maintained a creditor's bill.

In Equity. On exceptions to master's report.

J. B. Martin, Day & Bell, and Murray Allen, for complainant.
Pou & Fuller and Francis D. Winston, for defendant.

PURNELL, District Judge. The above-entitled suit in equity was instituted in the District Court and after answer to the bill, replication, reference to a referee and various orders, appears to have been by consent referred to a master. Said order of reference is missing from the files.

This is one of the class of cases, out of the general rule, where consent confers jurisdiction under the statue. Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. And jurisdiction thus acquired is retained to the end of the controversy. And questions touching the jurisdiction seem to have been ignored, and the controversy submitted to the master and court until the filing of defendant's brief when the point is made that the action should have been at law, not in equity. This point was not pressed, and if it had been the court is of the opinion there is sufficient equity to sustain the jurisdiction. The District Court, strictly speaking, has no equity jurisdiction except such as is conferred by the bankrupt act. This is in a great measure inferential to be gathered from the act. But even this question is raised too late and complainant having invoked the jurisdiction of the court, and defendant submitted his claims to such jurisdiction, the court will dispose of the cause on the record. Section 67e of Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449] and the amendment of Feb. 5, 1903, c. 487, § 16, 32 Stat. 800 [U. S. Comp. St. Supp. 1905, p. 691], seems to confer jurisdiction on the court of bankruptcy, which under the act is the District Court.

The master reports as follows:

"The counsel for the respective parties agreed upon a partial statement of facts as follows:

"On February 23, 1904, a petition in bankruptcy was filed against I. J. Baker and J. A. Hollowell, trading as Hollowell & Baker, and they were duly adjudged bankrupts on March 8, 1904. On August 3, 1903, a mortgage on the stock of goods of Baker & Hollowell was given to C. W. Mitchell to secure three notes aggregating $1,000, dated August 3rd, and due on November 1, 90 days from date, and four months from date respectively. This mortgage was not registered until November 5, 1903, less than four months before the petition in bankruptcy was filed. From the time of the execution of the mortgage and until the filing of the petition in bankruptcy, the mortgagors, Baker & Hollowell, remained in possession of the stock of goods, continuing the business, and disposing of and adding to the stock. On February 15, 1904, Baker & Hollowell made a general assignment, making C. W. Mitchell, the defendant, preferred creditor. On February 25, 1904, the defendant, C. W. Mitchell, sued Baker & Hollowell and Geo. W. Lassiter, trustee under the general assignment, for the possession of the goods, in the superior court of Bertie county. In this action no answer was filed and no defense made, and C. W. Mitchell was adjudged to be the owner of the stock of goods and entitled to possession thereof by virtue of the mortgage held by him. This action is to set aside the mortgage of Baker & Hollowell to C. W. Mitchell and put the trustee, J. R. Mitchell, in possession of the stock of goods or the value thereof."

In addition to the foregoing, the master finds as follows:

"That the mortgage in question (a copy of which is included in the examination of the defendant, which examination is made a part of this report) was executed in good faith and for a present consideration, to wit, money advanced to enable the said bankrupt firm to pay its bills. There is no evidence from which the master can find that the said firm was at that time insolvent within the meaning of the bankrupt act of July 1, 1898, c. 541, section 1, subd. 15, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]. The mortgage was not registered until November 5, 1903, about three months before the filing of the petition herein. It does not appear that at the time of the registration the defendant mortgagee knew of the insolvency of the said firm, though it was in fact insolvent. The master finds, however, from all the circumstances, that the defendant at that time had reason to believe and did believe that the said firm was embarrassed, but that in registering the mortgage there was no purpose to acquire a preference, the purpose being to perfect his lien under the said mortgage. It appears to the satisfaction of the master that the sale of the goods was fairly conducted, after having been duly advertised, and in the absence of testimony to the contrary, the price, $1,500, was reasonable.

"It is further found that C. W. Mitchell, the defendant, disclaimed taking under the deed of assignment, but his debt was inserted therein with the knowledge and consent of his attorney, he having instructed the said attorney to represent him in the matter. No personal property exemption has ever been assigned, nor does it appear that the members of the firm have consented that it shall be laid off to them as individuals, either for themselves or the benefit of the mortgagee.

"The assets, as appears in the schedule, exclusive of the stock of goods, is $104.00 in chattel property, $225.00 in open accounts, and an insurance policy of $1,000 on the life of I. J. Baker, a member of said firm. Exclusive of the mortgage to defendant Mitchell (upon which no payments have been made, there being now due $1,000, and interest; and exclusive of a mortgage made to Mrs. Baker during the same year of 1903, there being due upon it $600), the said firm, according to the schedule, contracted an indebtedness during the year 1903 of $3,242.76, the same being for goods and merchandise. It does not appear that any of these creditors had notice of the mortgage. Of these debts the sum of $771.47 was contracted between August 3, 1903, the date of the execution of the mortgage, and November 5, 1903, the date of its registration. They are as follows:

"H. B. Goodrich............................................... $ 96 79
"The Lowey Drug Store.........................................    27 15
"E. A. Davis & Son............................................    14 62
"H. S. Nichols & Co...........................................    24 45
"Watkins, Cattrell & Co.......................................     9 70
"J. E. Hurst & Co.............................................   598 76

#### "Conclusions of Law.

"(1) The Master is of the opinion and so finds, that the taking and registering of the mortgage under the circumstances do not constitute a preference under the bankrupt act.

"(2) That the mortgage to the defendant is good and valid except as to those creditors whose debts were contracted between the execution and registration of the same, and as to these it is, as a matter of law, fraudulent and void.

"(3) That the proceedings ending in a judgment by the superior court of Bertie county for the possession of the goods is not res judicata so far as this action is concerned.

"(4) The master recommends that judgment be entered in favor of the plaintiff for the benefit of said creditors in the sum of $771.47 and the costs of this action."

To this report all parties file exceptions. Complainant's first exception is to the finding of the master that there has been no consenting or demand for personal property exemptions for the bank-

rupts and refers to the answer. The personal property exemptions provided for by the Constitution of North Carolina, art. 10, § 1, is personal for the debtor, not for the benefit of creditors, and can only be demanded, and selected by him. The provision of the Constitution is well understood as construed by the Supreme Court of the state. If construed as contended for, to give a creditor a preference under the bankrupt law, it would be in contravention of that act of Congress and void. Certainly it cannot be given this effect by the courts of the United States administering the bankrupt act. It would be giving a preference which is prohibited. Homestead and personal property exemptions are intended for the debtor and his family (In re Richardson, 104 Fed. 873, 44 C. C. A. 235), not for creditors. This exception is overruled. The argument of defendant is based on a misconception of the purposes and intent of exemption laws. The true intent is that where a man is overtaken by misfortune or his financial ventures prove out disastrous he shall be allowed from the wreck a pittance for the purpose of keeping himself and family from actual want. Such laws are based on this beneficent idea, not to aid or benefit shrewd, unmerciful, grasping creditors, whose principal study is to aid such in evasions of the true intent of the law, to avail themselves of "short cuts." Here the personal property exemption is claimed by the mortgagee whose mortgage was secreted and recorded as found by the master. This article of the Constitution contemplates, as often held, that the personal property exemption shall be laid off and set aside out of property then owned by the debtor. The master, himself, for many years chief justice of the Supreme Court of the state, probably had in mind all the opinions on this article of the Constitution construing the same and properly held there had been no proper demand for a personal property exemption. Such reservation in a deed of trust or mortgage would furnish conclusive evidence of fraud. Boone v. Hardie, 87 N. C. 72.

Defendant further excepts to the finding of fact in section 4 and insists that it was the duty of those creditors to show they had no notice of the mortgage—they are seeking to recover on the ground they had no actual notice. There seems to be no pretense that plaintiff had actual notice of the mortgage and there was no legal notice or notices in contemplation of law until the mortgage was registered, three months after its execution and within a short time —less than four months of the adjudication. The intent of the parties can best be arrived at from the mortgage itself, which is filed as an exhibit. Except for sinister purposes it is difficult to imagine why a party holding a mortgage on a stock of merchandise when the statute provides for its registration, should wish to secrete the mortgage, carry it in his pocket, instead of putting it on record, thus giving notice to the commercial world of the financial condition of the mortgagor. The well-earned character of the state of North Carolina and of its native population for honesty, favoring a square deal, is in keeping with the law as decided by the state Supreme Court in Cheatham v. Hawkins, 76 N. C. 335, that such

dealings constitute fraud and render such mortgage void, especially, as decided by the master as to creditors who sold the mortgagors goods subsequent to the execution of the mortgage.

There is some diversity of opinion as to what law will be followed by the bankrupt courts in determining the validity of a chattel mortgage, some courts holding that the law of the state in which the transaction occurred will be followed (In re First National Bank [6th Circuit] 135 Fed. 62, 67 C. C. A. 536). In this case the court holds if the mortgage is made in good faith, it is a good security under the Ohio law from the time the mortgagee takes possession and before such actual possession is taken it is void as a matter of law as to purchasers and creditors of the mortgagors. Dugan v. Beckett, 129 Fed. 56, 63 C. C. A. 498; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171. Others hold it is a doctrine of general jurisprudence not depending for its support upon any provision of the state law, and not binding on the bankrupt courts or the United States courts upon such questions. Crooks v. Stuart (C. C.) 7 Fed. 800; In re Hull (D. C.) 115 Fed. 858; Robinson v. Elliott, 89 U. S. 526, 22 L. Ed. 758, which holds that a mortgage of a stock of goods, containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade, and to use the money thus obtained to replenish his stock, is invalid, and the court can, as a matter of law, pronounce it void. The discussion as to which law governs is therefore merely academical, as both the state and United States court holds the same doctrine. In the case at bar, the mortgage does not contain such a provision in express terms, but the intention is plain, and the answer admits, and the master finds as a fact, that the intention was carried into effect. What was done was intended and what was intended was done. In defendant's answer it is admitted that "it is true the said firm remained in possession of the said stock, and sold and disposed of some of it, and replenished some of it," but they did so without authority of this defendant except such as arose from the relationship between them of debtor in possession of property under mortgage.

The courts of the state have not gone as far as the Supreme Court of the United States in declaring such mortgage void as a matter of law; they have held that where a mortgagor is allowed to remain in possession with power to sell, the mortgage is presumptively fraudulent, and unless this presumption is rebutted by evidence the mortgage is fraudulent in law. Cheatham v. Hawkins, 76 N. C. 335; Id., 80 N. C. 161; Boone v. Hardie, 83 N. C. 470; Id., 87 N. C. 72.

The reasoning in the first case cited seems to be conclusive. The opinion was written by one of the most clear-headed justices ever on the state supreme bench. True, there have been some modifications of the doctrine in Cheatham v. Hawkins, but in equity and courts controlled by equitable principles such mortgages should be declared void, especially when kept secret and not recorded as provided by statute they shall be. The inference of fraud arising in such case is not rebutted by proof that the debt secured is a bona fide debt, and that

the insolvency of the mortgagor was unknown at the time of the execution of the mortgage. Holmes v. Marshall, 78 N. C. 262.

Nor can it be rebutted by evidence of the parties that the deed was made in good faith, and not to defraud creditors. Cowan v. Phillips, 119 N. C. 26, 25 S. E. 711.

Another fact which tends to show that this mortgage is fraudulent is the failure on the part of C. W. Mitchell to have it recorded until a short while before the petition in bankruptcy was filed and some time after its execution.

The fact that a mortgage is withheld from record and finally recorded just before the mortgagor makes a general assignment for the benefit of creditors, is a circumstance to be considered with other circumstances, as indicating fraud. Jones on Chattel Mortgages, § 337.

The withholding of a mortgage from record is a matter open to explanation. But, if it appears that the mortgage was withheld from record in order to enable the mortgagor to remain in possession of a stock of goods, and to deal with it as his own and thereby aid him in making purchases of new goods on a false credit, the mortgagee will be estopped as against parties so misled from asserting the existence of a lien under his mortgage. Jones on Chattel Mortgages, § 337; Lyon v. Savings Bank (C. C.) 29 Fed. 566, 577.

The use of the word "reserve" in the last section, wherein the mortgagors "reserve all right, title, and interest in the property mortgaged until the debt is paid" would constitute another badge or evidence of fraud, and render the mortgage invalid.

A trustee in bankruptcy may avoid a mortgage fraudulent under a bankrupt law. The title attempted to be passed by such mortgage vests in such trustee. He stands in the shoes of the bankrupt, but represents the creditors, and is entitled to possession, and may bring an action to enforce his right of possession. He can maintain any action either could maintain. Such an action is not analagous to a creditor's bill, and it is no objection to it that the claims against the bankrupt are not in judgment. The title is vested in him by operation of law.

The bankrupt law instead of vesting in the trustee the remedies of the creditors against the property judgment, execution, and creditor's bills, vests in him at once the title to the property—makes him the owner.

It is argued that the mortgage in controversy being good as between the parties is also good as between the mortgagees and trustee in bankruptcy of the mortgagor; but the rule is well settled that the trustee represents the rights of creditors, and may attack conveyances made by the bankrupt in fraud of creditors. It is so provided in the statute. The trustee may prosecute any suit to recover assets in the hands of third parties, or to enforce the payment of claims that could have been prosecuted by the creditors themselves had no proceedings in bankruptcy been instituted.

In re Garcewich, 115 Fed. 87, 53 C. C. A. 510, is in many respects on all fours with the case at bar. Judge Wallace, in delivering the opinion of the Circuit Court of Appeals, Second Circuit, quotes the decision of the lower court, the language of the referee, as follows:

"I understand that a trustee in bankruptcy can maintain an action to set aside a fraudulent transfer of property whether a judgment has been previously recovered by a creditor or not."

The opinion of the Court, delivered by Judge Wallace, affirms this view of the referee. This was an action to recover certain property sold the bankrupt upon credit and upon the understanding that the title to such of them as should not be sold by the bankrupt should remain in the vendor until paid for. The learned Judge uses this language:

"Even in the case of a chattel mortgage, when it is understood between the mortgagor and the mortgagee that the mortgagor may sell his chattels in his business and use the proceeds, the transaction is fraudulent in law as against the creditors of the mortgagor. Such an arrangement, if expressed in the instrument, defeats its essential nature and qualities as a mortgage, so that, in a legal sense, it is not a security, but merely the expression of a confidence by the mortgagee in the mortgagor; and, if made, but not expressed in the instrument, is equally vicious if not more suggestive of a fraudulent purpose. We think that the court below erred in viewing the case as one in which there had been a valid conditional sale good as against creditors. If the sale had been of that character, we think the decision would have been correct, but, being a fraudulent one, it was void as to the trustee."

This is in accord with the provisions of section 67 of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], which vests in the trustee authority to recover the property of the bankrupt conveyed or otherwise transferred by him in fraud of his creditors.

The Supreme Court of the United States says in Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43: "Creditors of a bankrupt can have no remedy which will reach property fraudulently conveyed, except through the assignee, in whom such property thus fraudulently conveyed vests, and who may recover the same."

On the hearing, much stress was laid on the decision of this court in Re Lillington Lumber Company (D. C.) 132 Fed. 886, but the facts in that case were entirely different from the case at bar. The syllabus indicates this. "A lien otherwise valid, which is required to be registered within 12 months is valid and will be protected if recorded within that time, although after the bankruptcy of the debtor." This was following the state statute and there was no question of fraud, actual, legal, or equitable—a naked question of law. All the decisions on this question of liens by mortgage are, as the Texas case, cited from (In re Clifford [D. C.] 136 Fed. 475) based upon state laws, good faith, fair dealing, and an absence of fraud. From whatever standpoint the mortgage under consideration is viewed, actual, legal, or equitable, it is fraudulent, not only as to subsequent creditors as decided by the master but as to all creditors and should have been so held by the master.

It is therefore, considered and adjudged that the master be and is hereby affirmed in his holding, that the mortgage is fraudulent and void as to subsequent creditors, and it is considered and adjudged said mortgage is, for the reasons hereinbefore stated, fraudulent and void as to all creditors.

All other exceptions to the master's report are overruled and said report both as to findings of fact and conclusions of law is affirmed, and judgment will be entered for the amount claimed in the declaration and for the costs of this suit to be taxed by the clerk of this court.