Milton *v.* Boyd.

---

WILLIAM F. MILTON et al., composing the firm of W. F. Milton & Co.,

*v.*

BENJAMIN BOYD and DAVID LINDSAY.

An unrecorded mortgage upon chattels, unaccompanied by any change of possession, will prevail over a subsequent mortgage given to secure a prior indebtedness without change of its form or the surrender of any security, provided the earlier mortgage was not kept from the record or the chattels left in the possession of the mortgagor for any improper or fraudulent purpose.

Heard on bill and answer.

Milton v. Boyd.

The complainants and the defendant Boyd each claim the title to a silk mill plant in the city of Paterson, by virtue of chattel mortgages executed to each of them, respectively, by the defendant Lindsay, who was at their date the owner and in possession of the mortgaged chattels. The complainant's mortgage bears date on the 4th day of September, 1891, and was executed and delivered on the 5th and recorded on the 9th of September, and was given to secure a debt due from Lindsay to them. The defendant Boyd's mortgage was dated, executed, delivered and recorded on the 8th of September, one day prior to the recording of complainant's mortgage. Possession of the chattels mortgaged remained in Lindsay.

The allegation of the bill is—*first*, that the Boyd mortgage was taken with full notice on the part of Boyd of the execution and existence of the complainants' mortgage ; *second*, that it was given without any consideration whatever, and, *third*, that if there was any consideration for it it was a pre-existing debt, and therefore that the mortgagee, Boyd, was not a *bona fide* mortgagee within the meaning of the fourth section of the consolidated act respecting chattel mortgages. It farther alleged the giving of an additional mortgage to Boyd by Lindsay of the same date to secure the same debt upon other personal property, not included in complainants' mortgage, and that Boyd was about to sell the chattels included in complainants' mortgage under his mortgage, and prays for an injunction, and that the chattels may be sold under the order and direction of this court.

On presentation of the bill an order to show cause why an injunction should not issue, with *interim* restraint, was made, and five days afterward, upon the return of that order, the defendant Boyd presented his own affidavit, and that of Lindsay, the other defendant in opposition to the motion, and it was then agreed that the affidavit of Mr. Boyd should be taken as his answer to the bill, and the cause be heard as upon bill and answer ; that the affidavits be taken as true, and the allegations of the bill, except so far as they are contradicted by the affidavits, also be taken as true.

Milton *v.* Boyd.

The facts thus disclosed are, that Mr. Lindsay is the son-in-law of Mr. Boyd, and borrowed of him in March, 1888, the sum of $2,500, in two sums secured by two promissory notes still held by him, which was used by Lindsay in buying the silk mill plant in question, upon a promise that in case he became embarrassed in business Lindsay would give Boyd the first lien on the property so purchased by chattel mortgage or other competent instrument; that no part of the principal has been paid, but interest has been paid upon it from time to time. The two mortgages given by Lindsay to Boyd were made to secure the two notes so made in 1888, which were not surrendered, and Boyd never held any security for them except that appearing upon their face; and, further, the defendant Boyd had no notice, information or suspicion whatever of the existence of the complainants' mortgage at the time of taking his mortgage.

It was conceded at the argument that the property covered by one of Boyd's mortgages, and not included in complainants' mortgage, together with that covered by both complainants' and defendants' mortgages, would not be sufficient in the aggregate to pay the defendants' debt. Hence, the complainants' equity to have the property included in one of the defendants' mortgages, not included in his (complainants') mortgage, sold first in satisfaction *pro tanto* of defendants' debt, was not worth pursuing.

*Mr. Eugene Stevenson,* for the complainants.

*Mr. John W. Griggs,* for the defendants.

PITNEY, V. C.

The complainants attack the defendants' mortgage on the ground that the title to the property at the time it was given was already vested in them, and that the defendant Boyd is not a "subsequent purchaser or mortgagee in good faith" mentioned in the fourth section of the act respecting chattel mortgages of May 2d, 1885. The defendant disputes this proposition and, in addition, attacks the complainants' mortgage on the ground that

Milton *v.* Boyd.

it appears by their bill that it was not in point of fact executed and delivered until after the execution of the defendants' mortgage. In support of this last position he relies upon certain facts set out in complainants' bill as follows : the complainants' mortgage, as originally prepared, executed and delivered, covered the silk machinery and fixtures, situate in the silk mill of the defendant Lindsay, No. 57 Van Houten street, in the city of Paterson, and also—

"all other the fixtures, plant, stock, goods, chattels and things which at any time during the continuance of said security should be used in or brought upon the said mill or premises, or any part thereof, in substitution for or in addition to any chattels or things then upon said premises,"

and also two bales of silk which Lindsay informed the complainants were, at the time of its execution on the 5th of September, in the hands of the "throwster," but would arrive at his mill in a few days, and he requested the complainants to postpone the recording of the mortgage until the arrival of the silk, and the complainants accordingly did defer recording it until the 8th day of September ; on the 8th of September Lindsay informed the complainants that the bales of silk in question were not in the hands of the throwster, as he had previously stated, but were in the possession of a warehouse company in Ellison street, in Paterson, which company held them as bailee, and that the warehouse receipt had been hypothecated by Lindsay with a bank in Paterson as a security for the loan of not over $500, and Lindsay then proposed and agreed that the chattel mortgage should be amended by omitting therefrom the two bales of silk and inserting in place thereof, and in substitution therefor, a bale of Japan tram, one hundred and fifteen pounds, and a bale of Japan organ, one hundred and thirty pounds, belonging to Lindsay, and then being on the premises of the Fidelity Warehouse Company in Ellison street, in the city of Paterson ; and the mortgage was thereupon altered and amended accordingly, and after its alteration and amendment, on the 8th of September, it was reacknowledged by Lindsay, but not until after the execution and recording of Boyd's mortgage.

Milton *v.* Boyd.

The complainants were then, by further representations by Lindsay, induced to keep it off the records until the next day, the 9th of September.

The contention of the defendants is that this alteration and reacknowledgment of the mortgage, on the 8th of September, had the effect of destroying its value as a mortgage under its original execution and delivery of September 5th, and was in effect a substitution of a new mortgage for the old mortgage, and hence its efficacy to pass the title to the silk mill plant must date as of the 8th of September, and as of a later hour on that day than the execution and recording of the Boyd mortgage.

I am unable to discover any ground for sustaining the defendants' position on this part of the case. I cannot see how the efficiency of the mortgage given to complainants as a conveyance and transfer of the title of the silk mill machinery and plant, therein plainly described, can be affected by the circumstance that the instrument was subsequently amended in the manner stated in the bill.

The title to the property in question passed at the original delivery of the instrument. The amendment was made by consent of both parties. There was no erasure of the description of the chattels in question nor of the signature of the mortgagor. The object of the parties was to add to the property mortgaged certain chattels not originally included therein, and not to destroy the instrument so far as regarded the chattels in question. The amendment was probably contrived by the defendant Lindsay, and carried through as a part of a settled plan to induce complainants not to record their mortgage for two or three days, and to give him (Lindsay) the opportunity to secure his father-in-law by the chattel mortgage in question.

I think the complainants' mortgage is entitled, as against the defendants, to be treated and considered as a *bona fide* mortgage executed, delivered and recorded as of the several dates above set forth. It was conceded, of course, that the complainants' debt was actual and in good faith, and thus the precise question is presented and remains whether or not a creditor who takes a chattel mortgage to secure a pre-existing indebtedness without

Milton v. Boyd.

giving up any security, or changing the form of the indebtedne'ss, or extending the time of payment, or in any wise altering his position as a general creditor, is "a mortgagee in good faith" in the sense in which those words are used in the fourth section of the Chattel Mortgage act, which declares :

"That every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and *mortgagees in good faith*, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder or holders of said mortgage, his, her or their agent or attorney, stating the consideration of said mortgage, and as nearly as possible the amount due and to grow due thereon, be recorded as directed in the succeeding section of this act."

In considering this question, it is important to bear in mind the precise force and value of complainants' mortgage before its registry, as between the parties to it, and also as against all the world except the class of persons mentioned in the fourth section of the statute. It was beyond all question, as between the parties, a perfectly valid instrument, and resulted in a complete transfer of the title of the chattels by way of pledge.

Prior to the enactment of the original Chattel Mortgage act of March 24th, 1864 (*P. L. of 1864 p. 493*), such a mortgage would have been good as against all the world. *Runyon v. Groshon, 1 Beas. 86; Chapman v. Hunt, 2 Beas. 370; Miller ads. Pancoast, 5 Dutch. 250.* For although the possession of the chattels remained in the mortgagor, yet this circumstance was, according to the principles adopted in those cases, entirely consistent with the absence of any intention to mislead or defraud creditors or other persons dealing with the mortgagor.

The cases just cited show that the act of March 24th, 1864, effected a modification of the common law of the state. As the law stood before that act, a mortgage of chattels given for a valuable consideration, unaccompanied by the transfer of possession, was good as against all the world if it appeared that the retention of possession by the mortgagor was, as in *Runyon v. Groshon*, for a proper and honest purpose, and not for the pur-

Milton v. Boyd.

pose of deceiving others and enabling the mortgagor to hold
himself out to the world and deal with the chattels as the abso-
lute owner.

The language of the fourth section of the mortgage act above
quoted was repeated in the Revision of 1877, and again in the
consolidated act of May 2d, 1885. It is an exact rescript of the
act of New York of 1833 (*Rev. Stat. of New York p. *136*), and,
in my judgment, it is reasonable to infer that the legislature
intended that it should receive the same construction in this state
that it had previously received in the State of New York. At
the date of our statute (1864), the construction of its prototype
in this respect was entirely settled. The court of appeals of that
state, in 1858, in *Van Heusen* v. *Radcliff, 17 N. Y. 580,* in
affirmance of a previous decision of the supreme court, held,
upon a review of all the authorities, that an assignee for the
benefit of creditors was not such a *bona fide* purchaser as could
avoid an unrecorded chattel mortgage unaccompanied by posses-
sion. And in *Thompson* v. *Van Vechten (September, 1863), 27
N. Y. 568* (at *pp. 580–586*), the same court held, in like affirm-
ance of the previous decision of the supreme court, that the
holder of a chattel mortgage given to secure an antecedent debt
was not a mortgagee in good faith under the New York statute,
and could not displace a prior unrecorded chattel mortgage unac-
companied by possession. The case is precisely in point.

But just here my attention is called by defendants' counsel to
a course of decisions in New York with regard to the transfer
of commercial paper for a pre-existing debt, which hold that
such consideration is not sufficient to give the transferee the posi-
tion of a *bona fide* holder, and that the general course of decis-
ions of other states of the Union, and in this state (*Allaire* v.
*Hartshorne, 1 Zab. 665*), is not in accord with this doctrine, and
hence he argues that it should not be in accord with the doctrine
as applied to chattel mortgages. But the distinction between
ordinary property, real and personal, and commercial paper, in
this respect, was recognized in *Allaire* v. *Hartshorne*, and was
fully stated and acted upon by the supreme court of the United
States in *The Savings Bank* v. *Bates, 120 U. S. 556* (at *pp. 564,*

Milton v. Boyd.

565), and in this state, by Chancellor Zabriskie, in *Mingus* v. *Condit, 8 C. E. Gr. 313, 315,* and again, by Chancellor Runyon, in *Pancoast* v. *Duval, 11 C. E. Gr. 445.* This last was a case of a contest between an unrecorded mortgage of lands and a subse- quent conveyance to secure a pre-existing debt. The latter was held not to constitute the grantee a *bona fide* purchaser under the act regulating the registry of mortgages of land.

The principle of these cases was followed in *De Witt* v. *Van Sickel, 2 Stew. Eq. 209,* in the case of the assignee of a mortgage of lands subject to a latent equity, and in *Shaw* v. *Glen, 10 Stew. Eq. 32,* in the case of a conflict between an assignee for the bene- fit of creditors and an unrecorded mortgage of chattels unaccom- panied by possession.

Against this train of decision, counsel for defendant cites another in this state, which he contends is in conflict with it and of greater authority, which I will examine and consider in their order.

*Allaire* v. *Hartshorne, 1 Zab. 665,* was an action upon a promissory note. The question was whether the rule regulating the transfer of commercial paper prevailing in New York, or that prevailing in many other states and adopted by the supreme court of the United States, in *Swift* v. *Tyson, 16 Pet. 1,* should be held to be the law in this state. Chief-Justice Green, in his opinion, does not treat the rule governing the transfer of prop- erty, other than commercial paper, as at all open to doubt, but states it as settled, thus: " That the principles of a court of equity regulating the transfer of property, viz., that a purchaser who has obtained a legal title as a mere security for or payment of a pre-existing debt, without parting with anything of value, is not entitled to the character of a *bona fide* purchaser for value, and that he who has paid only a part consideration is entitled to the character of a *bona fide* purchaser *pro tanto*" &c.

*Uhler* v. *Semple, 5 C. E. Gr. 288,* was a suit by one partner against his co-partners and their mortgagees and judgment cred- itors of such partners, asking that the interest of the defendants in certain partnership chattels might be declared subject to the lien of a debt which those partners as individuals owed him, and

for which, as he alleged, they promised to give him a lien by mortgage or judgment. The chancellor (at *p. 292*) found, as a fact, that there was no promise to give complainant a mortgage, and none to give him a judgment other than that which they did give him, viz., a bond, with warrant of attorney to confess judgment, payable in one year, and he held (at *p. 293*) that a promise to give a judgment bond did not amount to an equitable mortgage. He found, as a fact (at *p. 293*), that the judgment creditors had no notice of whatever equity in that behalf complainant might have, and proceeds: "Nor does the fact that these judgments and mortgages were given to secure prior debts or liabilities, and that no new consideration was advanced, affect their prior equity in this state. The rule that a prior debt is not sufficient to make one a *bona fide* purchaser or mortgagee for value has never been adopted in New Jersey. Our courts have uniformly held that it is a sufficient consideration to protect one holding the legal title against the prior equity of one who has no legal right, when the other had no notice of such equity. The court of errors, in *Allaire* v. *Hartshorne,* `1 Zab. 665,* adopted the rule laid down by the supreme court of the United States, in *Swift* v. *Tyson, 16 Pet. 1,* and not the rule adopted in the State of New York in the case of *Stalker* v. *McDonald, 6 Hill 93.*"

It is plain at once that the learned chancellor here had in mind the rule regulating the transfer of commercial paper, and, so far as he dealt with ordinary property rights, was considering the case as one of a contest between a prior latent equity and a subsequent legal title without notice. The proposition that the holder of the legal title, founded upon a conveyance made in consideration of a prior indebtedness, is good as against a prior equity without legal title, and of which the holder of the legal title has no notice, may be sound without at all affecting the question in hand. Here the prior right is a legal title.

*Traphagen* v. *Hand, 9 Stew. Eq. 384,* was a suit by a judgment creditor to have a prior judgment against the same defendant declared and decreed to be paid and discharged as an apparent lien prior to his. The defendant's judgment had been

Milton *v.* Boyd.

assigned by the judgment creditor after the alleged payment and at the request of the debtor, and his assignee set up the defence of *bona fide* purchaser. This was held good by the chancellor, although a part of the consideration for the assignment was a prior debt of the judgment debtor. This doctrine was expressly repudiated by the court of errors and appeals on appeal, in *Traphagen* v. *Lyons, 11 Stew. Eq. 613,* and the decree affirmed on the ground that the prior judgment had not; in fact, been paid. The question here involved was not discussed on the review in that court.

*Sweeney* v. *Williams, 9 Stew. Eq. 459,* was decided by Vice-Chancellor Van Fleet before the doctrine of *Traphagen* v. *Hand* had been overruled by the court of appeals. Moreover, like that case and *Uhler* v. *Semple,* it was not a case under either the recording acts or the statute of frauds, but depended upon the purely equitable rights of the parties.

*Butterfield* v. *Okie, 9 Stew. Eq. 482,* was a suit to enforce a vendor's lien for unpaid purchase-money against a mortgagee of the vendee. The lien was held to prevail over the mortgage, on the ground that the latter was given to secure not the debt of the vendee, but that of her husband. The learned vice-chancellor did, indeed, hold that if it had been given to secure the vendee's own debt, it would have prevailed, not, however, on the ground that the mortgagee was a *bona fide* mortgagee, and, therefore, entitled under the recording acts to prevail over a prior legal title, but upon the familiar principle that she would in such case occupy the position of having obtained the legal title to secure a meritorious debt, while the complainant had no legal title, but only a right to come into a court of equity and ask that the legal title be subjected to a lien for a meritorious debt; and he quotes Chancellor Zabriskie's canon, in *Uhler* v. *Semple,* "that a prior debt is a sufficient consideration to protect one holding the legal right against the prior equity of one who has no legal right when the other has no notice of such equity."

*Bank* v. *Cummins, 12 Stew. Eq. 577,* in the court of errors and appeals, is relied upon as distinctly overruling the doctrine stated in *Mingus* v. *Condit,* but I do not so understand that case.

Milton v. Boyd.

It certainly does hold that *Mingus* v. *Condit* was erroneously decided, but the learned chief-justice puts it on the ground that the rule stated by Chancellor Zabriskie did not apply to the facts of that case nor to those of *Bank* v. *Cummins*. In the earlier case a conveyance of lands was made for the purpose of defrauding creditors, and afterwards the fraudulent grantee, at the request of the grantor, executed a mortgage upon the lands so conveyed directly to a creditor of the grantor to secure his debt. In the later case, the fraudulent grantee executed a mortgage to the fraudulent grantor in trust for a favored creditor. They were thus each simply the case of a preference by the debtor of certain creditors, and on that ground the court of errors and appeals held that the mortgagee, in the case before it, should hold his mortgage, and that the result ought to have been the same in the earlier case. Says the learned chief-justice, in criticising *Mingus* v. *Condit, 12 Stew. Eq. 580:* "The rule of law by which the efficacy of the facts was guaged, was wholly inapplicable. The case was made up of the facts of a deed of conveyance fraudulent as to creditors, and a subsequent mortgage to a *bona fide* creditor of such grantor at the instance of the vendor. It was not the case of a sale of the vendee in his own interest, or with a view to carry the fraud into consummation by turning the money so realized into the hands of the vendor for his private use, and thus diverting it from his antecedent creditors. The chancellor failed to notice this discrimination, and that the case before him presented the feature of an appropriation, as far as this operation of the mortgage reached, of funds of the fraudulent creditor in the same direction that he himself would have judicially administered it if the mortgagee had invoked in the proper method his assistance. From this view it appears that the topic thus introduced into the argument has no application to the present case."

It is contended by counsel that the case of *De Witt* v. *Van Syckel, 2 Stew. Eq. 209,* is subject to the same destructive criticism as that applied to *Mingus* v. *Condit*. It is not at all necessary for present purposes to determine whether or not this contention is sound. It rests upon the assumption that the facts of the two cases are substantially the same. I express no opinion

Milton v. Boyd.

upon it.   It is enough for present purposes to say that the criti-
cism in question leaves the doctrine as to *bona fide* purchasers,
stated in both *Mingus* v. *Condit* and *DeWitt* v. *Van Syckel*,
undisturbed and goes only to the extent of holding that a debtor
in failing circumstances may prefer and secure a favored creditor,
and that the statute of frauds was intended to protect such and
not to invalidate conveyances made to secure them, and this court
does not look with disfavor upon a mortgage or a conveyance
given by a debtor in failing circumstances to secure a favored
creditor.

The cases of *Pancoast* v. *Duval* and *Shaw* v. *Glen*, *supra*,
seem to me to control the decision of the present case.   The first
was, indeed, the case of a conveyance by way of mortgage of
lands, but I am unable to perceive any difference in principle
between the case of real and personal property in this respect.
The language of the several acts relating to them are substan-
tially the same.   *Shaw* v. *Glen* was the case of the holder of an
unrecorded chattel mortgage, unaccompanied by possession, claim-
ing preference over an assignment for the equal benefit of credit-
ors under the Assignment act.   This decision is in precise accord
with that in *Van Heusen* v. *Radcliff*, *supra*, and it seems to me
to cover the present case, for, if a grantee in trust to secure *all*
of the mortgagor's creditors does not take priority over an unre-
corded mortgage, I am unable to see why a single creditor
receiving such a grant to secure himself *alone* does not stand in
the same predicament.

And, on principle, I think the result is right.   The parties
here are equal in merit, but the complainants are prior in time.
Their title is older than that of the defendant, and, therefore,
better, unless postponed by force of the above recited section of
the Chattel Mortgage act.

Now, the mischief at which that section was aimed is mani-
fest.   As the law stood prior to its enactment a mortgagee of
chattels, by leaving them in the possession of the mortgagor, left
him clothed with the apparent unencumbered title and able to
deal with the chattels as his own, and to the injury of unsus-
pecting third parties who might part with value or otherwise

change their position irretrievably on the strength of such apparent ownership. That was the extent of the mischief, since a party who parted with nothing and did not change his position lost nothing and was not injured. The act classified such as "creditors and purchasers and mortgagees in good faith." By "creditors" was meant, as was conceded at the argument, judgment creditors, and by "purchasers and mortgagees in good faith" was meant such as parted with something of value, or otherwise altered their position irretrievably on the strength of the apparent ownership and without notice. For if, as before remarked, they neither parted with anything of value nor altered their position irretrievably, they were not injured, and if they had notice of the prior encumbrance they did not rely upon the apparent ownership, and so were not purchasers or mortgagees in good faith. "Good faith" in this connection means "actual reliance" upon the ownership of the vendor or mortgagor, because without notice of the encumbrance. *Bank* v. *Sprague, 6 C. E. Gr. 536 bottom.*

Professor Pomeroy, in discussing the general doctrine of *bona fide* purchaser as administered in equity, says (*2 Pom. Eq. Jur. § 749*):

"A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right and places himself in no worse legal position than before."

And such was the view of Judge Story, as evinced by his language in sections 391 and 416 of his treatise, and in *Morse* v. *Godfrey, 3 Story C. C. R. 364* (at *p. 389*). To the same effect is the text of *Jones Mort.* § *458,* and, also, *Jones Chat. Mort.* § *247.*

In short, the section in question creates a statutory estoppel against the holder of the unrecorded mortgage in favor of those who have been injured by the apparent ownership of the mortgagor, the operation of which, as in all estoppels, is limited by the extent of the injury. *Campbell* v. *Nichols, 4 Vr. 88; Holcomb* v. *Wyckoff, 6 Vr. 39; Haughwout* v. *Murphy, 7 C. E. Gr. 531* (at *p. 547 et seq.*)

It was not contended at the hearing that the circumstance that Boyd's debt was for money loaned Lindsay to be used in purchasing the mortgaged chattels, and upon a promise if he became embarrassed to secure him by a first mortgage, at all strengthened Boyd's position.

Any equity he may have against Lindsay arising out of that circumstance is a latent equity of which there is no evidence or suggestion that complainants had any notice. With regard to it, therefore, Boyd stands precisely where the complainant stood in *Uhler* v. *Semple,* and his right fails as against the complainant for the precise reason there stated by Chancellor Zabriskie, and reiterated by Vice-Chancellor Van Fleet in *Butterfield* v. *Okie,* and I cannot enforce it as against complainants without disregarding the rule so stated and sanctioned.

Nor is the position of Mr. Boyd in that respect such as to excite the sympathy of a court of equity as against that of the complainants. The question at once suggests itself, why did he not take a chattel mortgage and record it as soon as the plant was purchased? Why rely upon a mere promise to give it in case the debtor became embarrassed? To this there can be but one answer—the object must have been to enable Lindsay to obtain mercantile credit on the strength of the apparent ownership of the chattels. This is not such an object as a court of equity approves. I am inclined to think that if Boyd had taken a mortgage at the date of the purchase of the plant, in 1888, and had kept it from the record, permitting Lindsay to deal with the property as he did, such mortgage would have been held void as against that of the complainants, quite independent of the Chattel Mortgage act and upon the principles stated in *Runyon* v. *Groshon* and *Miller* ads. *Pancoast,* because so kept from the record for the purpose of enabling the mortgagor to obtain credit upon the strength of the apparent ownership of the goods. And precisely here lies the difference in the actual merits of the two claims. The complainants took their mortgage in the ordinary course of business to secure a debt incurred in like manner. Their delay for four days to record it was for a proper and legitimate purpose. While, on the other hand, the defendant

Boyd deliberately refrained from taking a mortgage to secure his debt for a purpose which this court cannot approve.

I think the complainants are entitled to a decree establishing the priority of their mortgage, with all its consequences.