GEORGE A. CAMP and others *vs.* NATHANIEL R. THOMPSON and another.

### July 11, 1878.

**Conveyance of goods in trust for grantor.**—Gen. St. *c.* 41, § 14, enacting that all conveyances of goods "made in trust for the use of the person making the same, shall be void," as against creditors of such persons, has no reference to cases in which the conveyance is made *primarily* and *principally* for the use of the grantee, and where the reservation to the grantor is merely incidental and partial.

**Same—Conveyance held not to be a mortgage.**—C. gave the plaintiffs an absolute bill of sale of certain lumber, plaintiffs giving to C. a writing providing that they should sell and dispose of all the lumber, and apply the proceeds first, to paying C.'s indebtedness to them, together with charges and expenses of sale, and second, to paying over to C. the remainder of such proceeds. *Held,* that these transactions did not constitute a mortgage.

**Solvency—Intent to defraud.**—The instructions given to the jury by the trial court as to the proper definition of solvency, for the purposes of this case, and as to the effect of certain facts upon the question whether a conveyance of goods was made with a fraudulent intent as against creditors, considered and upheld.

Action for the wrongful taking and conversion of a large quantity of lumber belonging to the plaintiffs. Defence that the lumber was taken from the possession of one Clark by the defendant Thompson, as sheriff of the county of Hennepin, under a writ of attachment duly issued in an action brought against Clark by the State National Bank, the other defendant herein; that the lumber was the property of Clark, who, being insolvent, had transferred it to plaintiffs with intent to defraud his creditors, and that plaintiffs received the transfer with knowledge of such intent of Clark, and with intent on their part to aid him in effecting such fraud. At the trial in the district court for Hennepin county, before *Young*, J., the plaintiff had a verdict; a new trial was refused, and the defendants appealed.

*Smith & Hale*, for appellants.

The bill of sale and Exhibit C did not constitute a mortgage for Clark retained no interest in the property, but only in the proceeds after paying plaintiffs' debt, expenses of sale, insurance, ground-rent, etc. Had the parties intended merely to secure plaintiffs and not to defraud other creditors, they would have done so by a mortgage, in which case other creditors of Clark would not have been hindered, for they could have levied on the property subject to the mortgage debt. But the bill of sale, Exhibit B, was absolute in form, and was put on record, and thus it was held out to the world that plaintiffs were absolute owners of the property. And even as between them and Clark, they were unlimited as to the manner and terms and time of making sales. Exhibit C was not recorded, and the trust for Clark in the balance of the proceeds was as secret as if it had not been put into writing. Clark had the same benefit from the lumber that he would have had, if disposing of it himself, while it remained perfectly secure from his other creditors. Such a transaction—a bill of sale with a secret trust—is void under Gen. St. c. 41, § 14, and is fraudulent at common law, because the bill of sale holds out false colors, it is evidence to prove the contract to be dif-

ferent from what it really was, and is calculated and may be used to deceive creditors; and the law presumes that one who buys goods of a person in debt, and takes evidence of the contract which is in its nature false, intends to use it for purposes of deception. *Parker* v. *Pattee,* 4 N. H. 176; and see *Coburn* v. *Pickering,* 3 N. H. 415; *Bryant* v. *Young,* 21 Ala. 264; *Chenery* v. *Palmer,* 6 Cal. 119; *Halcombe* v. *Ray,* 1 Ired. 340; *McCulloch* v. *Hutchinson,* 7 Watts, 434. That the reservation in Clark's favor made the transaction void, see *Maberry* v. *Shisler,* 1 Harrington, 349; *Green* v. *Trieber,* 3 Md. 11; *Goodrich* v. *Downs,* 6 Hill. 438; *Barney* v. *Griffin,* 2 N. Y. 365; *Lansing* v. *Woodworth,* 1 Sandf. Ch. 43; *Berry* v. *Riley,* 2 Barb. 307; *Strong* v. *Skinner,* 4 Barb. 546; *Dana* v. *Lull,* 17 Vt. 390; *Truitt* v. *Caldwell,* 3 Minn. 257 (364;) *Banning* v. *Sibley,* 3 Minn. 282 (389.) The true interpretation of the statute against trusts reserved in conveyances of chattels is found in *Goodrich* v. *Downs,* 6 Hill. 438; the lax construction given in *Curtis* v. *Leavitt,* 15 N. Y. 9, destroys its effect.

The court erred in its instruction that if the property was of no greater value than the consideration paid, or if Clark was solvent at the time, the transaction was not fraudulent. It matters not whether the surplus be large or small. The reservation to Clark of an interest in the surplus shows that a surplus was contemplated, and the reservation to Clark was a fraud on his creditors which was consummated when the instrument containing the reservation was delivered. *Leitch* v. *Hollister,* 4 N. Y. 211; and see *Goodrich* v. *Downs,* 6 Hill, 438; *Barney* v. *Griffin,* 2 N. Y. 365; *Dana* v. *Lull,* 17 Vt. 390.

It is not disputed that Clark was financially embarassed at the time of the transaction. He could not pay his debts as they became due, and, being a manufacturer and dealer in lumber, this condition was that of insolvency, within the established meaning of that term in reference to merchants, traders and manufacturers; and the court erred in refusing the defendants' request to give this definition of insolvency, and in charging them that if Clark "had in his own name,

subject to be levied on by execution, sufficient property to pay all his debts," he was solvent. But whether he was solvent or not is immaterial. A transfer of goods made with intent to hinder, delay or defraud creditors, is void as against existing creditors of the person making it, without regard to his solvency. The jury might have found that the transfer was made with one or more of these three intents, and yet, under the instruction of the court, they would be bound to find for the plaintiffs, unless they also believed that Clark was insolvent, within the definition given by the court, at the time the transfer was made. But the validity of the transaction depended solely on the existence of an intent to hinder, delay or defraud creditors, and not upon whether a remedy was or was not open to the creditors by resort to Clark's other property. *Wakeman* v. *Grover*, 4 Paige, 23; s. c. *Grover* v. *Wakeman*, 1 Wend. 187; *Hyslop* v. *Clarke*, 14 John. 458; *Halsey* v. *Whitney*, 4 Mason, 206; *Green* v. *Trieber*, 3 Md. 11.

The court erred in leaving the question of intent to the jury at all. It should have determined, from the writings themselves, what the intent was; *Greenleaf* v. *Edes*, 2 Minn. 226 (264;) *Truitt* v. *Caldwell*, 3 Minn. 257 (364;) *Burt* v. *McKinstry*, 4 Minn. 146 (204;) *Filley* v. *Register*, 4 Minn. 296 (391;) *Mower* v. *Hanford*, 6 Minn. 372 (535;) and should have instructed them that the transfer was fraudulent.

*Bradley & Morrison*, for respondents.

The transfer was of but a part of the debtor's property, and was largely for a present consideration. He then had other property, subject to execution, largely in excess of his debts. In such a case a reservation of the surplus to the debtor, after payment of the particular debt, does not avoid the transfer. *Wilkes* v. *Ferris*, 5 John. 335; *Leitch* v. *Hollister*, 4 N. Y. 211; *Nicholson* v. *Leavitt*, 6 N. Y. 516; *Curtis* v. *Leavitt*, 15 N. Y. 9, 204; *Beck* v. *Burdett*, 1 Paige, 305. In *Truitt* v. *Caldwell*, 3 Minn. 257 (364,) the transfer was an assignment of all the debtor's property for benefit of creditors. In other

cases cited by defendants the transfers were made by insolvents.

The transaction was not a conveyance in trust for Clark. *Goodrich* v. *Downs*, 6 Hill, 438, is not in point, and the dictum in that case, relied on by defendants, was distinctly overruled in *Curtis* v. *Leavitt*, 15 N. Y. 9, 114, cited and approved in *Truitt* v. *Caldwell*, 3 Minn. 257 (364,) and directly sustained in *Vose* v. *Stickney*, 19 Minn. 367. The question is not an open one in this state.

BERRY, J. The principal question in this case is whether certain lumber was conveyed by one Clark to the plaintiffs, with intent to hinder, delay or defraud creditors. It appeared that, in September, 1875, Clark entered into a contract (Exhibit A) with plaintiffs, whereby he purchased the right to cut logs upon their land at an agreed stumpage, and, to secure the payment thereof, and of such sums as might be expended by plaintiffs in relation to the logs, it was agreed that the title to the logs should remain in plaintiffs until the money due them on account thereof should be paid. The contract further provided that in case Clark did not pay for the logs by a given time, he might saw them, and deliver to plaintiffs, for their security, the lumber made therefrom, and from other logs, to a specified amount. The testimony in the case went to show that, pursuant to the contract, Clark sawed a part of the logs, and delivered to plaintiffs the lumber in controversy; that he stopped delivering lumber in October, 1876; that at that time, his indebtedness to plaintiffs for stumpage and advances was over $12,000; that being desirous of procuring more money, he made a bill of sale (Exhibit B) of the lumber to plaintiffs, receiving from them the paper, Exhibit C, and money sufficient to make up, with stumpage and previous advances, $13,000, and supplies to the amount of $1,500, in all $14,500, and that he also received from plaintiffs a transfer of all the unmanufactured logs held by them as security under Exhibit A, and which were of the value of about $5,000. There was also testimony going to show that at the

time when the bill of sale was made, Clark was solvent—that is to say, that he owned and was possessed of several thousand dollars' worth of unexempt property, over and above his indebtedness, upon which execution could be levied, and that a considerable part of it was wholly unencumbered. There was also evidence tending to establish the fact that the defendant bank, by which the bill of sale is attacked in this case, held in the hands of its cashier, as security for Clark's indebtedness, more property belonging to Clark than would suffice to pay all his indebtedness.

The bill of sale (Exhibit B) was an absolute conveyance of the lumber to the plaintiffs. Exhibit C, the paper given to Clark by plaintiffs, provided that the plaintiffs should sell and dispose of the lumber conveyed by the bill of sale, and apply the proceeds, *first*, to the payment of the sum of $14,500 aforesaid and interest, together with the charges and expenses of the care and sale of the lumber, and, *second*, to pay over to Clark, or his representatives or assigns, the remainder of the proceeds of the sale.

There is no evidence of any fraudulent intent in the transaction between the plaintiffs and Clark, other than such (if any) as is found in the bill of sale and the paper, Exhibit C, and the plaintiffs' possession of and disposal of the lumber.

The jury brought in a verdict for the plaintiffs, for the value of the lumber attached by the defendants. The verdict is, in our opinion, sustained by the evidence, and we think the contract (Exhibit A) was properly received in evidence as a part of the history of the transactions between Clark and the plaintiffs.

The transactions evidenced by the bill of sale and Exhibit C do not fall within the purview of Gen. St. *c.* 41, § 14, enacting that all conveyances of goods, "made in trust for the use of the person making the same, shall be void," as against creditors of such person. This section has no reference to cases in which the conveyance is made, as in the instance at bar, primarily and principally for the use of the grantee,

and where the reservation to the grantor is merely incidental and partial. *Vose* v. *Stickney*, 19 Minn. 367, and cases cited; *Truitt* v. *Caldwell*, 3 Minn. 257 (364.) Neither do these transactions constitute a mortgage, for they show clearly that the entire property in the lumber conveyed by the bill of sale was intended to pass and did pass to the plaintiffs, and that no property therein was reserved to Clark, or intended to be. His interest was not in the lumber, but in any surplus of its proceeds remaining after the plaintiffs were paid. As stated in the outset, then, the principal question in the case was, whether the lumber was conveyed to the plaintiffs with intent to hinder, delay or defraud Clark's creditors, and, upon the evidence in the case, this question was to be determined upon a consideration of the bill of sale and Exhibit C, including the facts and circumstances attending the execution of these two instruments, and the facts as to plaintiffs' possession and disposal of the lumber. The question was, then, one of mixed law and fact, and therefore a question for the jury, under proper instructions by the court. This was the view taken by the court below.

In its charge to the jury, the court below, having stated, in accordance with the fact, that it was not claimed on the part of the defendants that the evidence showed the existence of actual intent to defraud the creditors of Clark, other than as may be inferred from the bill of sale, the agreement back, and the possession and disposal of the property, proceeded to instruct as follows, viz.: "To constitute the transaction void, so as to enable defendants to recover in this action, it must appear, *first*, that at the time of the sale of the lumber, Clark was insolvent, and, *second*, that the effect of the transaction was to hinder and delay Clark's creditors; * * * that if, at the time of making the bill of sale, Clark had in his own name, subject to be levied upon by execution, sufficient property to pay all his debts, then, for the purposes of this trial, he would be solvent." We perceive no error here. If Clark was solvent, within the definition laid down by the court, the

conveyance effected by the bill of sale could not, in any rational sense, be said to have hindered, delayed or defrauded his creditors; for, notwithstanding the conveyance, Clark would have retained property sufficient to pay all his creditors, and out of which they could readily make their debts in the ordinary course of law.

The court further proceeded to charge the jury that if they found Clark to have been insolvent at the time of the making of the bill of sale, it would then be for them to inquire further into the question of fraudulent intent; that the bill of sale conveyed two classes of lumber, viz., one already delivered upon certain town lots, the other to be thereafter delivered upon the same; that there is no evidence that any lumber was delivered after the making of the bill of sale; that if the lumber actually delivered was not worth more than the sum of $14,500—the amount of the consideration paid for it— then there would be no excess of value to which a trust in favor of creditors could attach, and therefore no fraud; that if the property sold was of no greater value than the consideration paid, then the effect would not be to hinder and delay the creditors of Clark, for there would not thereby be any property placed beyond their reach other than such as was conveyed for a consideration paid, equal to the value of the same.

The court thereupon proceeded to charge the jury that the question before them became one partly of law and partly of fact; that if, as a fact, they found that there was piled upon the lots, and conveyed by the bill of sale, an amount of lumber the value of which in any considerable degree exceeded the consideration paid, in the proceeds of which Clark was to have a resulting interest, this would constitute a badge of fraud, to be considered in determining whether the sale was made with any fraudulent intent.  The idea of the court, as we gather from these and other portions of the charge, appears to have been that, so far as the lumber actually conveyed to and received by the plaintiffs was concerned, it was

open to the jury, upon all the facts appearing, to infer that there was no intent to hinder, delay or defraud creditors, because the value of the lumber was not, in the opinion of the parties to the bill of sale, nor in fact, in excess of the consideration paid for it by the plaintiffs, to wit, $14,500 ; and, further, that it was open to the jury, upon all the facts appearing, to infer that the reservation of proceeds of sales in Clark's favor was, in the intent and expectation of the parties, a reservation of proceeds to arise out of the sale of the lumber which Clark might deliver after the making of the bill of sale, no part of which, however, was ever delivered.· While the charge upon these matters is not so simple and clear as it might have been, we cannot say that it is erroneous.

This disposes of what appear to us to be the more important questions in the case.   We have not failed to notice the many other ingenious suggestions made by the defendants' counsel, but do not deem it necessary particularly to advert to them here.

Order affirmed.