## In re KRAMER MERCANTILE CO.

### In re KRAMER.

District Court, N. D. Oklahoma. September 19, 1927.

#### Nos. 330, 331.

1. **Chattel mortgages**  ⚓➝150(1)—**Filing of chattel mortgage in compliance with recording statute imports notice to third persons.**

Filing of chattel mortgage in compliance with recording statute of state imports notice to third persons of its contents.

2. **Chattel mortgages**  ⚓➝190(1)—**Mortgage on stock of merchandise held valid, though it permitted mortgagor to sell in usual course of trade and retain part of proceeds.**

Chattel mortgage on a stock of merchandise, given by the purchaser, who owed no debts, to the seller, to secure purchase money, which covered additions to the stock and provided that it should not be incumbered and that all subsequent purchases should be for cash, *held* valid, as against subsequent commercial creditors, under the law of Oklahoma, though it permitted mortgagor to sell in the usual course of trade and to retain a certain part of the proceeds.

3. **Chattel mortgages**  ⚓➝190(1)—**Permitting mortgagor to sell in ordinary course of trade and retain proceeds does not in itself raise presumption of fraud.**

A provision of a chattel mortgage, permitting the mortgagor to retain possession and sell in the ordinary course of trade and to apply the proceeds to his own use, does not in itself raise a presumption of fraud, but is only to be considered in connection with other attendant facts and circumstances in determining whether there is fraud in fact.

In Bankruptcy. In the matter of the Kramer Mercantile Company and George

J. Kramer, bankrupts. On review of order of referee holding invalid chattel mortgage to H. C. Huckaby. Reversed.

G. C. Spillers, of Tulsa, Okl., for intervener.

Yancey & Fist, of Tulsa, Okl., for receiver.

KENNAMER, District Judge. The intervener, H. C. Huckaby, sold a stock of goods, on the 17th day of January, 1925, to George J. Kramer, bankrupt, for a consideration of $9,036.35; $1,500 of the purchase price was paid in cash. The balance due was evidenced by two promissory notes, one in the sum of $1,500, and the other for $6,036.35. The notes were secured by a chattel mortgage upon the stock of goods and fixtures; the mortgage providing that the $1,500 note was to be paid by the application of one-half of the first $3,000 received by Kramer from the sales of merchandise, and that the $6,036.34 note was to be paid at the rate of $100 a month.

It has been stipulated by the parties that, on the date of execution and filing for record of the chattel mortgage as provided by the laws of Oklahoma, the mortgagor owed no indebtedness, that Huckaby, the seller of the stock of goods owed no indebtedness, and that the stock was free from the claims of any creditors.

It was further stipulated that, after the execution and filing of the chattel mortgage for record, the bankrupts in their statement to creditors showed the existence of the mortgage.

The mortgage provided that all after-acquired property should be covered by the mortgage, that no sale of the stock should be made without the written consent of the mortgagee, and that all subsequent purchases of goods should be paid for.

On the hearing before the referee, of the petition of the intervener to establish his mortgage as a lien, the referee held the mortgage valid as to the fixtures, but invalid as to the stock of merchandise.

The intervener has brought the case here to review the decision of the referee.

Counsel for the receivers have argued that the provisions of the mortgage which give the mortgagor the right to appropriate to his own use $1,500 out of the first $3,000 worth of sales, and gives the mortgagor the right to all of the sales after the $1,500 note is paid with the exception of $100 a month, render the mortgage invalid.

It is contended that the invalidity of the mortgage exists because these provisions in the mortgage inure to the benefit of the mortgagor rather than to the benefit of the mortgagee.

Counsel for the respective parties concede that each state has a right to determine the validity of chattel mortgages in its own state, and that the federal courts will follow the settled law of the state upon the subject. Etheridge v. Sperry, 139 U. S. 266, 11 S. Ct. 565, 35 L. Ed. 171.

It is insisted for the receiver that under the decisions of the Supreme Court of Oklahoma such a mortgage as the one under consideration is held to be a nullity.

The case of Bank of Perry v. Cooke, 3 Okl. 534, 41 P. 628, is relied upon by counsel, which case announces the following rule:

"1. Where, at the time of the execution of a chattel mortgage, it is understood and agreed between the parties that the mortgagor shall be allowed to remain in possession of the mortgaged property, and sell and dispose of the same in the ordinary course of trade, and apply the proceeds to his own use, the mortgage is absolutely void as to creditors of the mortgagor.

"2. It does not matter whether such agreement is oral or in writing, contained within the mortgage or without; if such an agreement was had, the mortgage is fraudulent and void as to creditors."

This rule seems to be well established in Oklahoma. See Jackson v. Kincaid, 4 Okl. 554, 46 P. 587; Will T. Little & Co. v. Burham, 5 Okl. 283, 49 P. 66; Godfrey et al. v. Hutchinson Wholesale Grocery Co., 12 Okl. 459, 71 P. 627; Snow v. Cody, 96 Okl. 81, 220 P. 578.

The very purpose of the above rule in Oklahoma and other jurisdictions holding such mortgages void is to prevent the perpetration of a fraud upon the creditors of a mortgagor. In the instant case the mortgage is attacked for fraud. It appears from the admitted facts on the date of the execution of the mortgage herein considered there were no creditors. The question then in this case is whether or not the mortgage is invalid as to subsequent creditors of the mortgagor. It is apparent that the mortgage was valid as between the parties. Snow v. Cody, 96 Okl. 81, 220 P. 578, supra; Sample, Receiver, v. Gettman-MacDonnell-Summers Drug Co. (D. C.) 14 F.(2d) 170.

The rule in Oklahoma is that an unrecorded chattel mortgage is a valid contract between the parties, and, when the mortgagee takes possession with the consent of the mortgagor by reason of a breach of the condition of the mortgage, his lien is superior to the

claim of general creditors, except those creditors who have acquired a lien upon the property by judgment, attachment, or otherwise, prior to the possession of the mortgagee. Sample, Receiver, v. Gettman-MacDonnell-Summers Drug Co., supra, and cases therein cited.

[1] The filing of a chattel mortgage in compliance with the recording statute imparts not only notice of the act of filing, but of the contents of the mortgage, and third parties are charged with notice of the contents thereof to the same extent as if they had actual notice. First National Bank of Washington v. Haines, 76 Okl. 301, 185 P. 441. In the case of In re Terrell, 246 F. 747 (C. C. A. 8), the court held:

"* * * The mortgagor may remain in possession, and, if he does, his mortgage as a general rule must be filed for record, or it will not be protected against creditors of the mortgagor who have acquired valid liens thereon by contract or judicial process; but, if the mortgagee takes possession of the property or files his mortgage for record before any other right to or lien upon the property attaches, the title under the mortgage *is good against everybody,* though not recorded, if it was previously valid between the parties. The ultimate conclusion of the court is that a chattel mortgage in Oklahoma, though not recorded or possession of the property not taken by the mortgagee when made, yet if possession is taken by him, *or the mortgage is filed for record prior to the attaching of liens of other parties, the filing of the mortgage for record has the effect of taking possession, and the rights of the mortgagee will be protected from the date of the filing of the same for record. This, it will be observed, is the rule as to chattel mortgages in Oklahoma.* * * *"* (Italics ours.)

See Oklahoma State Bank of Enid v. Buckner, Trustee, 90 Okl. 109, 217 P. 189.

It is conceded by counsel for the receiver that a chattel mortgage which contains a power of sale, conditioned that the proceeds of each sale must be applied to the mortgage debt, is not per se fraudulent as to creditors of the mortgagor. The authorities supporting this rule also adhere to the rule that the question of fraud is one of fact to be determined by the court or jury, and, if such mortgage is made in good faith, it will be held valid. Godfrey et al. v. Hutchinson Wholesale Grocery Co., 12 Okl. 459, 71 P. 627; Hixon et al. v. Hubbell et al., 4 Okl. 224, 44 P. 222.

[2, 3] The instant case is distinguishable from the cases relied upon by counsel for the receiver in the following facts: There were no creditors in existence at the time the mortgage was executed; the mortgage provided that the purchaser of the stock of merchandise, who was the mortgagor, was not to incumber the stock, and neither was he to purchase merchandise on credit. This was an agreement between the mortgagor and the mortgagee, and the filing of the mortgage for record constituted notice to all of the above stipulation. Creditors of the mortgagor cannot be heard to assert claims to the prejudice of the mortgagee when they have caused a breach of the mortgage provisions on the part of the mortgagor by selling him goods on credit, in view of the filing of the mortgage which constitutes notice to them of such a stipulation. The position assumed for the receiver that the mortgage in question was void at its inception is unsound, in view of the admitted facts in the instant case. Some authorities support the rule that, where a mortgagor is permitted to retain possession and sell, applying the proceeds of sale to his own use, a presumption of fraud arises. Covington v. Brigham (D. C.) 210 F. 499; Egan State Bank v. Rice (C. C. A.) 119 F. 107; Hollenbeck v. Lauden, 35 S. D. 320, 152 N. W. 116; New v. Sailors, 114 Ind. 407, 16 N. E. 609, 5 Am. St. Rep. 632. But the greater weight of authorities hold that such a provision in a mortgage does not in itself raise a presumption of fraud, but is only to be considered in connection with other attendant facts and circumstances in determining whether there is fraud in fact. People's Saving Bank v. Bates, 120 U. S. 556, 7 S. Ct. 679, 30 L. Ed. 754; In re Harnden (D. C.) 200 F. 175; In re Ball (D. C.) 123 F. 164; Williams v. Winsor, 12 R. I. 9; Lyon v. Council Bluffs Savings Bank (C. C.) 29 F. 566; Dillon Bank v. Murchison (C. C. A.) 213 F. 147.

In the case of Huntley v. Kingman, 152 U. S. 527, at page 532, 14 S. Ct. 688, 690 (38 L. Ed. 540), the court, speaking through Mr. Justice Brown, says:

"The tendency of courts, in modern times, has been not to hold instruments of this character to be fraudulent and void upon their face, unless they contain provisions plainly inconsistent with an honest purpose, or the instrument indicates with reasonable certainty that it was executed, not to secure bona fide creditors, but to enable the debtor to continue to carry on his business under cover of another's name."

In re Ballance, Hibben, Hollweg & Co. v. Blann et al., 15 F.(2d) 46 (C. C. A. 7), the court held:

"Permitting such use of mortgaged merchandise as one conducting store would make of stock in trade held not to impair validity of chattel mortgage under Indiana law."

Judge Alschuler, in delivering the opinion of the court, said:

"For appellant it is not contended that under the law of Indiana the mortgage upon this stock of merchandise of a going business is void, but it is insisted that upon the sale of the mortgaged goods the proceeds should be applied or considered as having been applied upon the mortgage debt. In general, the principle of this contention is sound as applicable to Indiana chattel mortgages; but the principle will not be applied where the facts do not warrant."

The contention strongly urged in the case here is that the mortgagor being permitted to retain $1,500 out of the first $3,000 of sales invalidates the mortgage. With this contention I cannot agree. This mortgage was executed to secure the purchase price of the stock sold to the mortgagor, and the mortgagor agreed not to incumber the stock and to pay cash for all subsequent purchases. So long as the terms of the mortgage were performed by the mortgagor, there would exist no creditors to be defrauded, except the mortgagee.

In Huntley v. Kingman, 152 U. S. 537, 14 S. Ct. 688, 690, 38 L. Ed. 540:

"Whatever may be the rule with regard to general assignments for the benefit of creditors, there can be no doubt that in cases of chattel mortgages (and the instrument in question, by whatever name it may be called, is in reality a chattel mortgage) the reservation of a surplus to the mortgagor is only an expression of what the law would imply without a reservation, and is no evidence of a fraudulent intent. This was the ruling of the Court of Appeals of New York in Leitch v. Hollister, 4 N. Y. 211 [216], where the assignment was to the creditors themselves for the purpose of securing their demands. 'A trust,' said the court, 'as to the surplus, results from the nature of the security, and is not the object, or one of the objects, of the assignment. Whether expressed in the instrument, or left to implication, is immaterial. The assignee does not acquire the entire legal or equitable interest in the property conveyed, subject to the trust, but a specific lien upon it. The residuary interest of the assignor may, according to its nature, or that of the property, be reached by execution, or by bill in equity.' Cases in which reservations for the benefit of the assignor have been held to invalidate the assignment have usually been those where the reservation was either secret, or was upon its face detrimental to the interest of the creditors, and a practical fraud upon them. But, if the reservation be only of any surplus which may chance to remain after the debts are paid, it is difficult to see why it should invalidate the instrument, as the creditors obtain all they are entitled to, and the surplus is that which, as matter of law properly belongs to the mortgagor. It so rarely happens that a surplus is realized after the payment of all the debts that courts should not be too technical in holding that the reservation of such surplus invalidates the instrument, unless it appears to have been made with fraudulent intent. If a surplus had been realized in this case, it is difficult to see what could have been done with it, except to return it to the mortgagor, in view of the fact that the trustee was not a general assignee for the benefit of all the creditors. Dunham v. Whitehead, 21 N. Y. 131; Curtis v. Leavitt, 15 N. Y. 9; Beck v. Burdett, 1 Paige [N. Y.] 305 [19 Am. Dec. 436]; Camp v. Thompson, 25 Minn. 175; Calloway v. People's Bank, 54 Ga. 441; Hoffman v. Mackall, 5 Ohio St. 124 [64 Am. Dec. 637]."

I therefore conclude that, in view of the provisions contained in the mortgage under consideration, fraud cannot be implied as a matter of law, and the question to be determined resolves itself into one of fact. That there was no actual fraud is admitted by the parties.

The order of the referee denying the intervener a lien by reason of the mortgage is set aside.